700 A.2d 844

Richard ANDERSON

v.

Jean ANDERSON.

No. 130, Sept. Term, 1997.

Court of Special Appeals of Maryland.

Sept. 29, 1997.

Ellen D. Pattin, Olney, for appellant.

Alan L. Fishbein (Fishbein & Fishbein, P.A., on the brief), Ellicott City, for appellee.

Argued before HARRELL, EYLER and KENNEY, JJ.

EYLER, Judge.

The issue of first impression presented by this appeal is whether a noncustodial parent is entitled to a credit toward child support in the amount of Social Security benefits received directly by a minor child by virtue of the parent's work

history and eventual retirement. We hold that such benefits do not offset the obligor parent's child support obligation as a matter of law. Instead, a trial court, in exercising the discretion afforded to it by § 12–202(a)(2)(ii) of the Family Law Article, may take such payments into consideration in determining whether to deviate from the guidelines in any particular case. Alternatively, where a case involves parents with above-guidelines income levels, the trial court may consider such payments when it sets child support in accordance with the discretion afforded to it by § 12–204(d) of the Family Law Article.

## Facts

Appellant, Richard D. Anderson, and appellee, Jean D. Anderson, were divorced by decree dated December 15, 1992. Three children were born during the marriage, the first on April 28, 1981, and twins on June 6, 1983. The parties' divorce decree, *inter alia,* directed appellant to pay to appellee $600 per month per child. The decree incorporated a prior agreement between the parties, and the record does not contain any information with respect to how that figure was computed.

With respect to employment history, appellant spent 13 years on active duty with the United States Air Force and subsequently was employed by the National Security Administration until age 55. Thereafter, he worked for Martin Marietta Corporation, Ford Aerospace, and Loral Corporation, Ford Aerospace's successor and his employer at the time of divorce. On September 30, 1994, apparently at age 63, appellant retired rather than be laid off as the result of downsizing by Loral Corporation. As of the time of divorce, appellant earned approximately $113,000 per year. In 1993, appellant earned approximately $116,000, and according to appellant's brief, in 1995, after retirement, he earned $67,269. This total was comprised of pensions from the Department of Defense, the Office of Personnel Management, and Loral Corporation totalling $59,901, plus $7,368 in Social Security benefits. The parties entered into a stipulation at a hearing before a master

in September, 1995, however, to the effect that appellant's gross income was then $5,636 per month or $67,632 per year.

With respect to appellee, the record reflects that, as of the time of divorce, she earned approximately $70,000 per year. In 1995, at age 46, she was employed as a human resources manager by Westinghouse Corporation and, according to a stipulation between the parties, earned $6,704 gross income per month or $80,448 per year.

Based on appellant's history of employment, the three minor children of the parties also were eligible to receive and did receive Social Security benefits. The benefits began on November 1, 1994, initially in the amount of $354 per month, later increasing to $507 per month. The amount of appellant's Social Security benefits is not reduced or otherwise affected by the fact that the children receive Social Security benefits.

On October 24, 1994, appellant filed a petition to modify and decrease child support, and beginning in November, 1994, appellant unilaterally began reducing the amount of his child support payments to appellee by an amount equal to the amount of the Social Security benefits received by the children. He first deducted $354 from his monthly payments and then deducted $507 per month when the Social Security payments increased to $507 per month. Consequently, the total received by the children from both appellant and the Social Security Administration continued to be $1,800 per month.

Subsequently, appellee filed a petition to hold appellant in contempt for failure to pay directly the full $1,800 per month support pursuant to the December 15, 1992 decree. The matter was heard by a master in September, 1995, who issued a report and recommendations on September 21, 1995. Appellant filed exceptions, which the circuit court heard on September 10, 1996, and decided by memorandum and order on October 30, 1996.

Appellant, in his petition to modify child support, asserted that there was a change in circumstances based on his decrease in income and appellee's increase in income. Appellant

further asserted that he was entitled to a credit against his child support obligation in the amount of Social Security benefits received directly by the children. Appellee apparently conceded that some reduction in support going forward was indicated, based on appellant's decrease in income, but challenged the credits for Social Security benefits unilaterally taken by appellant prior to any modification order. Appellee also asserted that appellant had voluntarily impoverished himself and should be charged with potential income.

The master recommended monthly support in the amount of $1,412 effective June 1, 1995, plus a payment of $200 per month on arrears totaling $3,683 as of September 11, 1995.[1] The master did not find that appellant had voluntary impoverished himself, and imputed no potential income to appellant.

The transcript of the hearing in circuit court indicates that the master's notes reflecting her calculations were made a part of the record. As of the time the trial judge issued his memorandum opinion, however, he indicated that no work

---

1. Although, at the time that this case was argued below, the parties' combined adjusted actual income exceeded the guidelines schedule, it was assumed by all that the master extrapolated from the schedule in obtaining the basic support obligation. Although such a method has not been challenged by either party, we note that the basic support obligation arrived at by the master seems to exceed that which would result by reference to a strict extrapolation from the schedule. According to the master's written report, appellee's monthly actual income was $6,704 minus $370 expended for health insurance premiums, and appellant's monthly actual income was $5,636, making the parties' combined adjusted actual income $11,970 or $1,970 in excess of the guidelines schedule. The parties do not dispute these figures. The highest basic support obligation provided in the schedule for three children is $2,026. Application of a strict extrapolation method would result in a basic support obligation of $2,226, or $200 in excess of $2,026. Even when $250 is added for work related child care expenses, this amount is less than that which would have resulted in a child support award of $1,412. Of course, at the same time we make this notation, we also note that neither of the parties has challenged the master's calculations. Further, the trial court is not required to use a strict extrapolation method to determine support in a non-guidelines case, but may resort to any other rational method that promotes the general objectives of the child support guidelines and considers the particular facts of the case before it. *See Voishan v. Palma*, 327 Md. 318, 328–29, 609 A.2d 319(1992).

sheet had been provided with the master's written report and recommendations, and he could not discern how the master had treated the Social Security benefits. The parties have not favored us with a copy of any exhibits in the record extract, and we have not been able to locate in the record the exhibits referred to at the circuit court hearing, including the master's notes.[2] Consequently, even though the parties did not dispute the numbers involved, and present as the sole issue the treatment of the Social Security benefits received by the children, we are unable to track the numbers, either as argued by the parties, or as recommended by the master.

Appellant filed exceptions to the master's written report, only one of which is currently before us: that the reduction in support failed to allocate the children's monthly Social Security benefit. With respect to this exception, the trial court held that the children's Social Security benefit did not meet the definition of actual income to either parent, as set forth in the Family Law Article, but could be considered an amount in direct reduction of the parties' combined basic child support obligation. The trial court concluded that, because it could not tell how the master allocated the children's monthly Social Security benefit, the exception was denied as were all other exceptions, but the case was remanded to the master to compute the bottom line in light of the trial court's opinion and to submit a new report with a worksheet and the calculation of any new arrearage. Appellant filed a timely appeal raising the trial court's treatment of the Social Security benefit.

## Discussion

The sole question presented by this appeal is whether the trial court erred in denying appellant credit against his child support obligation in an amount equal to the direct payment by the Social Security Administration for the benefit

---

2. At oral argument, counsel advised us that they are unaware of any documents prepared by the master other than the master's report and recommendation.

of the children.[3]  Appellant argues that he is entitled to a
dollar for dollar credit against his child support obligation
because the benefits were earned by appellant through his
years of service and his payments of Social Security taxes.·  In
addition, he stressed a number of times below that, during the
time he unilaterally reduced his payments, appellee never
received an amount less than that provided for in the parties'
separation agreement.  Appellant maintains that the source of
the funds should not matter as long as appellee is receiving
the total allotment of the child support for which the trial
court determines appellant is responsible, and argues that to
treat the benefits in any other manner is to provide appellee
with a windfall.

Preliminarily, we make the following observations regarding
the nature of the Social Security benefits.  As we noted
earlier, the benefits paid to or on behalf of the minor children
do not in any way affect appellant's Social Security benefits.
Appellant receives the same amount in Social Security benefits
no matter whether the children also receive benefits.  Al-
though it is true that the entitlement to benefits was created
by appellant's years of employment and payment of Social
Security taxes, it is an entitlement belonging to the children
and not to appellant.  Further, although it also is true that,
for the time period prior to the modification of child support,
the total support provided by appellant, when combined with
the benefits, always equalled the $1,800 per month provided
by the decree, the decree does not provide for reduction of the
child support award by Social Security benefits.

Appellant acknowledges that the precise issue before us has
not been determined in Maryland, and relies on cases from a
number of other jurisdictions in support of his position.  As

---

**3.**  As it is undisputed that appellant's retirement and resulting reduction
in income constituted a material change in circumstance entitling
appellant to consideration of his motion for modification of child
support, we need not decide whether, as a threshold matter, the receipt
of Social Security benefits or other income by the minor child, standing
alone, would constitute a material change in circumstance that would
support a modification.

Maryland possesses a comprehensive statutory scheme governing child support awards, *see* Family Law Article, §§ 12–201 *et seq.*,[4] we shall begin our analysis by examining that scheme. Because Maryland's child support legislation provides an answer to our query, we also shall end our analysis there.[5]

The Maryland Child Support Guidelines Statute, Fam. Law §§ 12–201 through 12–204, enacted in February, 1989, is based on the Income Shares Model. *Voishan v. Palma*, 327 Md. 318, 322, 609 A.2d 319 (1992) (citing Senate Judicial Proceedings Committee Bill Analysis, Senate Bill 49 (1989)). The premise of this model is that "a child should receive the same proportion of parental income, and thereby enjoy the standard of living, he or she would have experienced had the child's parents remained together." *Id.* "[T]he model establishes child support obligations based on estimates of the percentage of income that parents in an intact household typically spend on their children." *Id.* at 322–23, 609 A.2d 319. Under this model, each parent contributes to the care of the child on a basis proportionate to his or her share of the total gross income.

The statutory scheme requires the trial court to first determine the gross actual income of each parent and then determine the adjusted actual income of each parent. If the parents' combined adjusted actual income is $10,000 per month or less, the trial court must then determine the basic support obligation by reference to the schedule provided in § 12–204(e). Once the basic child support obligation is determined, additional work-related child care expenses, extraordinary medical expenses, and other additional expenses are

---

4. All references herein are to Md.Code Ann., Fam. Law art. (1991 Repl.Vol., 1996 Suppl.).

5. For a review of how other jurisdictions treat Social Security retirement benefits, *see* DiSabatino, *Right to Credit on Child Support Payments for Social Security or Other Government Dependency Payments Made for Benefit of Child*, 34 A.L.R.5th 447, §§ 9–13, at 498–507 (1995). We will not look to these cases for guidance, however, as all the guidance we require is embodied in our own statutory scheme.

added to obtain the total support obligation. The total support obligation is then divided between the parents in proportion to their incomes. In sole physical custody cases such as the one before us, the custodial parent is presumed to spend that parent's total child support obligation directly on the child, § 12–204(k)(2), and the noncustodial parent shall owe his or her total child support obligation to the custodial parent minus any ordered payments included in the calculations that are made directly by the noncustodial parent on behalf of the child. § 12–204(k)(3). The amount of child support dictated by the guidelines schedule is presumed to be correct, although the presumption may be rebutted by evidence that such amount would be "unjust and inappropriate in a particular case." § 12–202(2)(ii); *Voishan,* 327 Md. at 323–24, 609 A.2d 319. If the combined adjusted actual income of the parents exceeds $10,000 per month, the trial court is directed to use its discretion in setting the amount of child support. § 12–204(d); *Voishan,* 327 Md. at 324, 609 A.2d 319.

As we will explain, this matter must be remanded to the circuit court for a determination of the issues consistent with this opinion. As of almost two years ago, it appears that the combined adjusted actual income of the parties was slightly in excess of the guidelines, but we, of course, do not know the current facts or what they will be on remand. Consequently, we will discuss the issue with regard to cases both within and without the guidelines.

A review of the record indicates consideration below of at least four different ways, from a purely mechanical standpoint, of treating the Social Security benefits: (1) treat the benefits as satisfying appellant's support obligation, although from a different source, by giving appellant a dollar for dollar credit (position urged by appellant); (2) treat the benefits as income to appellee (position presumably taken by master);[6] (3) sub-

---

**6.** Although it was argued at the hearing on appellant's exceptions that the master had treated the Social Security benefits in this manner, the master's report does not reflect that the benefits were treated in this manner.

tract the benefits from the basic child support obligation so as to give a credit to both parties (position taken by trial court); or (4) do not factor in the benefits at all in calculating child support (position urged by appellee).

With the possible exception of the fourth approach, none of the approaches is provided for by the support guidelines. The guidelines do not provide for application of Social Security benefits directly against the obligor's support obligation.

■ Neither do the guidelines provide that Social Security benefits paid on behalf of a minor child shall be included in the income of the custodial parent. Section 12–201(b) defines "income" as "actual income *of a parent,* if the parent is employed to full capacity; or [ ] potential income *of a parent,* if the parent is voluntarily impoverished." While "actual income" means income from any source, § 12–201(c)(1), including Social Security benefits, § 12–201(c)(3)(x), it is undisputed that the Social Security benefits in this case are paid on behalf of the children. Thus, they are income to the children. As such, we agree with the circuit court that they are not properly included in the first instance in the custodial parent's income for the purpose of determining the basic child support obligation and the parties' respective proportions of such obligation. *See Moore v. Tseronis,* 106 Md.App. 275, 284, 664 A.2d 427 (1995)(noting that potential income of noncustodial parent's spouse may not properly be imputed to noncustodial parent).

Similarly, however, the approach adopted by the trial court is not provided for by the guidelines. Section 12–204(a)(1) provides that the basic child support obligation shall be determined in accordance with the schedule, and shall be divided by the parents in proportion to their income. The schedule sets an amount based upon the parents' joint income and does not provide adjustments for other sources of income. *See* § 12–204(e). Finally, in cases involving sole physical custody, each parent's support obligation is determined by adding each parent's respective share of the basic child support obligation, work-related child care expenses, extraordinary medical ex-

penses, and any additional expenses for school or transportation. *See* § 12–204(k). There is no provision in § 12–204 for consideration of any sources of support other than the adjusted actual incomes of the parents.

Despite the fact that the guidelines do not expressly provide for treatment of Social Security benefits paid directly to or on behalf of the minor children, we believe that trial courts may consider such benefits when determining whether to deviate from the guidelines under § 12–202(a)(2), or when setting the amount of child support in accordance with § 12–204(d).

### A. Deviations from guidelines in accordance with § 12–202(a)(2).

Section 12–202(a)(2) provides trial courts with some discretion to deviate from the guidelines in particular cases. That section provides in pertinent part as follows:

(2)(i) There is a rebuttable presumption that the amount of child support which would result from application of the child support guidelines set forth in. this subtitle is the correct amount of child support to be awarded.

(ii) The presumption may be rebutted by evidence that the application of the child support guidelines would be unjust or inappropriate in a particular case.

(iii) In determining whether the application of the guidelines would be unjust or inappropriate in a particular case, the court may consider:

1. the terms of any existing separation or property settlement agreement or court order, including any provisions for payment of mortgages or marital debts, payment of college education expenses, the terms of any use and possession order or right to occupy the family home under an agreement, any direct payments made for the benefit of the children required by agreement or order, or any other financial considerations set out in an existing separation or property settlement agreement or court order; and

2. the presence in the household of either parent of other children to whom that parent owes a duty of support

and the expenses for whom that parent is directly contributing.

Although § 12–202(a)(2)(iii) does not expressly state that the trial court may consider income of the children or other sources of support, we have observed in prior opinions that this section does not exclude " 'other relevant financial considerations that have the same or similar impact as the considerations listed.' " *Shrivastava v. Mates*, 93 Md.App. 320, 328, 612 A.2d 313 (1992)(quoting *Tannehill v. Tannehill*, 88 Md. App. 4, 14, 591 A.2d 888 (1991)). As stated by Judge Rosalyn B. Bell, writing for this Court in *Tannehill*,

[t]he Legislature has made it clear that a departure from the guidelines is warranted where their application would be unjust or inappropriate. No list of factors or considerations could identify every situation in which the application of the guidelines would produce an unjust or inappropriate result. Rather, these considerations provide an analytical framework within which a judge may determine the appropriate award of child support. For example, the factors contained in § 12–202(a)(2)(iii) delineate situations that affect the financial resources of the parents or the financial needs of the children. To construe this statute so as to exclude other relevant financial considerations that have the same or similar impact as the considerations listed above would be in contravention of the legislative intent to prevent unjust or inappropriate results.

*Id.* at 14–15, 591 A.2d 888. *See also In re Joshua W.*, 94 Md.App. 486, 501–04, 617 A.2d 1154 (1993)(where child support award was to be paid to State to cover costs of foster care, rather than to a custodial parent, and trial court awarded amount significantly less than that provided by guidelines, case was remanded to trial court for determination of child support within the guidelines, or alternatively, for the court to make the requisite findings to support a deviation from the guidelines).

While the receipt of Social Security benefits by the children is the type of consideration affecting the financial needs of the

children, the trial court, under § 12–202(a)(2) cannot simply reduce the child support award without making certain factual findings mandated by § 12–202(a)(2)(iv). That subsection provides as follows:

(iv) 1. If the court determines that the application of the guidelines would be unjust or inappropriate in a particular case, the court shall make a written finding on the record stating the reasons for departing from the guidelines.

(2) The court's finding shall state:

A. the amount of child support that would have been required under the guidelines;

B. how the order varies from the guidelines;

C. how the finding serves the best interests of the child; and

D. in cases in which items of value are conveyed instead of a portion of the support presumed under the guidelines, the estimated value of the items conveyed.

Accordingly, in a guidelines case involving Social Security benefits or other income of the minor child or children, a trial court may properly deviate from the guidelines as long as it makes the requisite findings of fact, including a finding of how the award serves the best interests of the child. As we held in *In re Joshua W.*, a downward departure from the guidelines could serve the best interests of a child if, for example, the child was in foster care and the court found that such an adjustment was necessary for the parent to obtain the economic stability necessary to regain custody and properly care for the child. 94 Md.App. at 504, 617 A.2d 1154. Similarly, a downward departure could benefit the child if the child's needs were being met by the lower award and the lower award permitted the noncustodial parent to maintain a better household for extended visitation. Conversely, the existence of additional income to meet the needs of the minor child might, in a particular case, be offset by a finding that the child's needs exceed the amount provided by guidelines and the supplemental income. Essentially, the trial court must consid-

er the particular circumstances of each case and exercise its discretion accordingly.

## B. Awards in cases involving income levels in excess of guidelines.

The guidelines schedule set forth in § 12–204(e) stops at a monthly income level of $10,000. When the parents' combined adjusted actual income exceeds this level, § 12–204(d) provides that "the court may use its discretion in setting the amount of child support." In *Voishan,* the Court of Appeals noted that, implicit in the Legislature's reliance on judicial discretion in such cases is that

> "at the very high income levels, the percentage of income expended on children may not necessarily continue to decline or even remain constant because of the multitude of different options for income expenditure available to the affluent. The legislative judgment was that at such high income levels judicial discretion is better suited than a fixed formula to implement the guidelines' underlying principle that a child's standard of living should be altered as little as possible by the dissolution of the family."

327 Md. at 328, 609 A.2d 319 (quoting from amicus curiae brief submitted by Attorney General). Accordingly, in *Voishan,* the Court of Appeals upheld a child support award based upon what the trial court determined to be "the reasonable expenses of the child," even though such an award exceeded that which would have resulted from a strict extrapolation method. The Court cautioned that in exercising its discretion the trial court should not ignore the general principles from which the schedule was derived. *Id.* It further noted that while strict extrapolation from the guidelines may provide a useful guide to the trial court, the court "may also exercise [its] independent discretion in balancing [7]

---

**7.** For cases involving income levels within the guidelines, it is presumed that the Legislature already has done this balancing, and that such balance is reflected in the numbers set forth in § 12–204(e).

'the best interests and needs of the child with the parents' financial ability to meet those needs. Factors which should be considered when setting child support include the financial circumstances of the parties, their station in life, their age and physical condition, and expenses in educating the children.' "

*Id.* at 329, 609 A.2d 319 (quoting *Unkle v. Unkle,* 305 Md. 587, 597, 505 A.2d 849 (1986)).

In exercising its discretion, the trial court must be mindful that Maryland's child support statute is a response to "the federal call for child support guidelines [that] was motivated in part by the need to improve consistency of awards." *Id.* at 331, 609 A.2d 319. The guidelines establish a rebuttable presumption that the maximum support award under the schedule is the minimum that should be awarded in cases above the schedule. *Id.* at 331–32, 609 A.2d 319. "Beyond this the trial judge should examine the needs of the child in light of the parents' resources and determine the amount of support necessary to ensure that the child's standard of living does not suffer because of the parents' separation." *Id.* at 332, 609 A.2d 319.

In the instant case, although this was an above-guidelines case at the time it was decided below, the trial court did not exercise its discretion in light of the factors set forth in *Voishan.* Rather, the trial court looked to the guidelines for the answer to the question of how to treat the benefits:

On the Maryland Child Support Work Sheet, the $507.00 does not meet the definition of "actual income" to either parent. It is, however, indisputably an amount available in direct reduction of the basic child support obligation established on line # 4 on the work sheet. That fairly and equitably reduces the amount of the child support obligation on both parents and simply requires the balance to be paid in proportion to their incomes.

While the bottom line resulting from the approach taken by the trial court ultimately may be justified, the trial court must look at the particulars of the case before it can make the requisite factual findings to support its award. Accordingly,

we will remand this case for further proceedings consistent with our opinion.

On remand, if the parties' income has lowered to levels within the guidelines, the trial court must look to the guidelines schedule, without consideration of the benefits, for the presumptively correct award. The court then must consider whether the existence of the benefits, or other factors, is sufficient to rebut the presumption that the award is correct. If the court does deviate from the guidelines, it must expressly make the findings set forth in § 12–202(a)(2)(iv).

If, on remand, the parties' income remains at levels above the guidelines schedule, the trial court must consider the benefits as simply one fact of the many available to it upon which to base an award. It must presume that the highest amount of support set forth in the guidelines schedule is the minimum appropriate amount of support. Beyond that, the determination of the amount sufficient to meet the financial needs of the children in light of the parents' financial resources is within the sound discretion of the trial court.

**JUDGMENT VACATED; CASE REMANDED TO THE CIRCUIT COURT FOR HOWARD COUNTY FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE DIVIDED EQUALLY BETWEEN THE PARTIES.**