847 A.2d 486

**Bruce TUCKER**

v.

**Terri E. TUCKER.**

**No. 501, Sept. Term, 2003.**

Court of Special Appeals of Maryland.

April 16, 2004.

James A. Mood, Jr. (Thomas D. Murphy & Mood, P.C. on the brief), Rockville, for appellant.

Richard D. McNally (Tietz, McNally & Goldberg, P.C. on the brief), Rockville, for appellee.

Argued before HOLLANDER, KRAUSER, and CHARLES E. MOYLAN, JR., (Retired, specially assigned) JJ.

KRAUSER, Judge.

In 1995, appellant, Bruce Tucker, and appellee, Terri E. Tucker,[1] divorced and entered into a settlement agreement to resolve their differences over alimony and child support. That

---

1. Mrs. Tucker has since remarried and uses the name Terri E. Dawson. We will continue to refer to her as "Mrs. Tucker" to be consistent with the caption of this case.

agreement required Mr. Tucker to pay Mrs. Tucker alimony for seven years and child support until their four children reached the age of eighteen. When Mr. Tucker's alimony obligation expired in 2002, Mrs. Tucker filed a motion in the Circuit Court for Montgomery County seeking an increase in child support. That motion was granted, and Mr. Tucker's child support obligation increased.

The circuit court's decision to increase his child support payments does not trouble Mr. Tucker as much as the method the circuit court employed to do so. He specifically objects to the court's treatment of Social Security benefits, received by his children as a result of his age, in computing his and Mrs. Tucker's child support obligations. After first calculating the parties' respective incomes, as it is required to do, the court added to Mrs. Tucker's income the Social Security benefits that she receives on behalf of the Tuckers' children. That addition, Mr. Tucker maintains, violates Maryland law. Those benefits, he insists, should not have been added to Mrs. Tucker's income but subtracted from the total amount of the parties' child support obligation.

Mr. Tucker divides his argument into two issues. They are:

I.  In modifying Appellant's child support obligation, did the trial court commit error by including social security payments paid on behalf of the minor children in the income of Appellee?

II. How should a trial court address social security benefits paid for the benefit of minor children in light of federal regulations which require that those funds be used either for the expenses of the minor children or saved for their benefit?

For the reasons that follow, we shall vacate the judgment of the circuit court and remand this case to that court for a recalculation of the child support award.

## BACKGROUND

The Tuckers were married on October 27, 1984, and were granted an absolute divorce a little more than ten years later.

When these proceedings began, Mr. Tucker was sixty-seven years of age and Mrs. Tucker, forty-one. They have four teen-aged children: Cristen, Brittany, Zachary, and Brandon.[2] Before seeking a divorce, the parties entered into a settlement agreement, which was later incorporated into a judgment of absolute divorce. That agreement, among other things, provided that Mr. Tucker would pay Mrs. Tucker $3,500 per month in child support[3] and $3,500 per month in alimony for seven years.

One year after entering into that settlement agreement, Mr. Tucker retired. In conjunction with his retirement, he sold the business he owned, "Pioneer Technologies." The profits from the sale of that business totaled $6.7 million and were divided and placed into three separate Prudential Financial accounts. Mr. Tucker receives $32,219 income each month from the interest generated by those accounts, as well as $1,100 a month in Social Security benefits. When Mr. Tucker began receiving his Social Security benefits, Mrs. Tucker also began receiving $1,100 a month in benefits on behalf of the parties' four minor children as a result of Mr. Tucker's age and retirement.

Although Mrs. Tucker stayed home with the children during the Tuckers' marriage, after they divorced, she began working as a financial comptroller for E Quest Technologies, where she earned $40,000 per year. But, after two years, she was "laid off."

Mrs. Tucker admitted that she made "[v]ery little" effort to find another job. She believed that it was more important for her to stay home with her children, particularly the twin boys, whom she said had "problems emotionally." The boys, she stated, suffered from "outbursts of anger" and had been both physically and verbally abusive towards each other and their

---

2. Mr. Tucker also has four adult children from a prior marriage.

3. That agreement also provided that child support would terminate for each child when that child "reache[d] his or her 18th birthday or [was] otherwise emancipated in accordance with Maryland law."

sisters. As a result, both boys were on medication and in counseling.

In February 2002 Mr. Tucker's alimony obligation under the parties' settlement agreement terminated. When that occurred, Mr. Tucker voluntarily increased his child support payments to $4,110 per month. Mrs. Tucker remarried, as did Mr. Tucker.

## PROCEDURAL HISTORY

On May 31, 2002, Mrs. Tucker filed a motion to modify Mr. Tucker's child support obligation. A hearing on that motion was held before a family division master. The master found that Mr. Tucker's annual income was $399,832 or $33,319 per month. That calculation was based on the master's finding that the average interest Mr. Tucker earned each month from his Prudential Financial accounts was $32,219, in addition to the $1,100 per month he received in Social Security benefits.

Mrs. Tucker was unemployed. Concluding that she had "voluntarily impoverished herself," the master imputed income to her for the purposes of determining her share of the child support obligation. He found that she could work while the children were in school for a total of thirty-five hours a week and earn $19.23 per hour, the hourly wage she had been paid at E Quest Technologies. He therefore imputed income to her of $35,000 per year or $2,916 per month.

Based on the monthly incomes of the parties, the master found that Mr. Tucker's percentage of the parties' combined monthly income was 92% while Mrs. Tucker's was 8%. Because the parties' total monthly income exceeded the child support guidelines, the master "focus[ed] on the reasonable expenses for [the four] children in order to determine the appropriate amount of child support." After finding that the reasonable monthly expenses of the children totaled $6,367, the master applied Mr. Tucker's percentage of the parties' combined monthly income to that amount and concluded that Mr. Tucker should pay $5,860 per month in child support. The master then made the payment of that monthly amount

retroactive to the date the motion to modify was filed, credited Mr. Tucker with the child support payments he had made during that time, and determined that he owed a total of $14,000 in child support. The master also recommended that Mr. Tucker be ordered to pay $5,000 of Mrs. Tucker's attorney's fees.

Both parties filed exceptions to the master's report. Mr. Tucker excepted to the following findings:

(1) That "income for the defendant [is] $32,219.00 per month" not including payments from Social Security; and,

(2) that Defendant "extrapolating from the child support guidelines would not take into consideration the additional expenses for activities and lifestyle which would be enjoyed by the children in the case *sub judice;*" and,

(3) that "reasonable monthly expenses for the children [are] $6,367.00 [per month];" and,

(4) that Defendant pay monthly child support in the amount of $5,860.00; and,

(5) that Defendant pay "92% of all non-reimbursed counseling fees for the minor child Brandon;" and,

(6) that Defendant be required to pay an arrearage of $14,000.00; and,

(7) that Defendant "pay to the plaintiff as and for contribution towards attorney's fees the sum of $5,000.00"; and,

(8) the Defendant receive no credit for Social Security benefits paid directly to the Plaintiff for the benefit of the minor children.

Mrs. Tucker excepted only to the master's recommendation that Mr. Tucker be required to contribute $5,000 towards her attorney's fees. She argued that Mr. Tucker should be required to pay all of her attorney's fees, which totaled $9,740.

The circuit court held a hearing to consider the exceptions to the master's report. The court ultimately agreed with most of the master's report, but opined that the Social Security benefits paid to Mrs. Tucker on behalf of the children could not "simply be ignored." Declaring that the benefits either

had to be deducted from the children's monthly expenses or added to Mrs. Tucker's monthly income, the court added the benefits to Mrs. Tucker's monthly income for "consistency" because the Social Security benefits paid to Mr. Tucker had been added to his income. It imputed to Mrs. Tucker $2,916 plus $1,100 in Social Security benefits, for a total of $4,016. Recalculating each party's respective percentage of the parties' total income, it attributed 89% of that income to Mr. Tucker and 11% to Mrs. Tucker.

The circuit court applied those percentages to the children's monthly expenses. After determining that the children's expenses were $6,257 per month,[4] the court ordered Mr. Tucker to pay $5,569 of that figure in child support each month. It then made those monthly payments retroactive to the date Mrs. Tucker filed her motion to modify. That created an arrearage. After taking into consideration the support Mr. Tucker had paid during that time, the court determined that there was an arrearage of $16,049.

## DISCUSSION

### I.

■ Mr. Tucker contends that the circuit court erred in adding the children's Social Security benefits to Mrs. Tucker's income. To treat the Social Security benefits as Mrs. Tucker's income conflicts with the statutory definition of income, Mr. Tucker claims. Such an approach, he argues, has been "expressly rejected by this Court."

■ Initially, we note that, under Maryland law, "[t]he court may modify a child support award . . . upon a showing of

---

**4.** Although the circuit court expressed some disagreement with the master's recommendations regarding the children's expenses, it indicated that it was using the master's recommendation as to the total monthly expenses. The court stated that the master determined that the expenses totaled $6,257. But the master determined the expenses to be $6,367. Neither party corrected the court's error, nor did the parties appeal that issue, and the circuit court used the $6,257 total in calculating Mr. Tucker's child support obligation.

a material change of circumstance." Md.Code (1984, 1999 Repl.Vol.), § 12–104(a) of the Family Law Article ("FL"). And the question of whether to modify an award of child support "is left to the sound discretion of the trial court, so long as the discretion was not arbitrarily used or based on incorrect legal principles." *Smith v. Freeman,* 149 Md.App. 1, 21, 814 A.2d 65 (2002).

Mr. Tucker does not dispute that a modification of the child support was appropriate, conceding that the termination of his alimony obligation was a material change of circumstances. Instead, he confines his argument, as noted, to a narrower issue: whether the circuit court erred in making that modification by adding the children's Social Security benefits to Mrs. Tucker's income. Mr. Tucker claims that it did, citing *Anderson v. Anderson,* 117 Md.App. 474, 700 A.2d 844 (1997), *vacated on other grounds,* 349 Md. 294, 708 A.2d 296 (1998).

In *Anderson,* this Court considered the issue of Social Security benefits paid on behalf of children when the parents' combined income falls within the child support guidelines and when it exceeds those guidelines. *Id.* at 475–76, 700 A.2d 844. In both instances, we rejected the approach used by the circuit court here, that is, including the children's Social Security benefits in the income of the custodial parent. *Id.* at 483, 700 A.2d 844.

In *Anderson,* we began our analysis of that issue by observing that Maryland's child support guidelines, *see* FL §§ 12–201 to 12–204, do not "provide that Social Security benefits paid on behalf of a minor child shall be included in the income of the custodial parent." *Anderson,* 117 Md.App. at 483, 700 A.2d 844. We then turned to the statutory definition of income. That definition states that "income" is: "(1) actual income of a parent, if the parent is employed to full capacity; or (2) potential income of a parent, if the parent is voluntarily impoverished." FL § 12–201(b). "While 'actual income' means income from any source, [FL] § 12–201(c)(1), including Social Security benefits, [FL] § 12–201(c)(3)(x)," we concluded that Social Security benefits paid on behalf of the children,

"are income to the children." *Anderson,* 117 Md.App. at 483, 700 A.2d 844. Consequently, the court below erred in including the benefits in Mrs. Tucker's income.

Attempting to distinguish this case from *Anderson,* Mrs. Tucker claims that the circuit court "did not determine that the Social Security benefits were 'actual income' to [her] as defined by the Child Support Guidelines." That argument seeks to substitute a semantical distinction for a logical one. Although the circuit court did not conclude that the children's Social Security benefits were part of Mrs. Tucker's "actual income," as defined by the guidelines, its inclusion of those benefits in her income for purposes of determining the parties' child support obligations had the same consequence: Mrs. Tucker's income was increased by $1,100, the amount of the children's Social Security benefits, thereby decreasing Mr. Tucker's child support obligation. The court therefore erred in including the benefits in Mrs. Tucker's income, and we shall vacate the court's child support award and remand for a recalculation Mr. Tucker's support obligation.

## II.

Having determined that the circuit court erred in including the children's Social Security benefits in Mrs. Tucker's income, we turn to Mr. Tucker's claim that the proper approach for the circuit court to take is to "deduct[] from the calculation of the children's monthly expenses ($6,257) the social security benefits ($1,100) which must, under federal law, be applied to those expenses." According to Mr. Tucker, "logic demands [that] conclusion" because "federal law requires that [Mrs. Tucker] use the $1,100 in benefits to pay the expenses of the minor children." "Alternatively," he maintains, Mrs. Tucker "must, at a minimum, be ordered to save the unexpended social security benefits in accordance with federal law."

We begin by noting that "[w]hen, as here, the parents' combined monthly income exceeds $10,000, the [child support] Guidelines do not apply." *Smith,* 149 Md.App. at 19,

814 A.2d 65. "Rather, in an 'above Guidelines' situation, the statute confers discretion on the trial court to set the amount of child support." *Id.; see also* FL § 12–204(d); *Voishan v. Palma*, 327 Md. 318, 324, 609 A.2d 319 (1992). In exercising that discretion, the court " 'must balance the best interests and needs of the child with the parents' financial ability to meet those needs.' " *Smith*, 149 Md.App. at 20, 814 A.2d 65 (quoting *Unkle v. Unkle*, 305 Md. 587, 597, 505 A.2d 849 (1986)). " 'Factors which should be considered when setting child support include the financial circumstances of the parties, their station in life, their age and physical condition, and expenses in educating the children.' " *Voishan*, 327 Md. at 329, 609 A.2d 319 (quoting *Unkle*, 305 Md. at 597, 505 A.2d 849). We have also said that in an above guidelines case, the children's Social Security benefits are "simply one fact of the many available to [the circuit court] upon which to base an award" of child support. *Anderson*, 117 Md.App. at 489, 700 A.2d 844.

Despite the significant discretion conferred upon the circuit court in this area, Mr. Tucker urges us to direct the circuit court to deduct the children's Social Security benefits from their reasonable expenses before determining each parent's child support obligation. Such a result, he argues, is mandated by the federal Social Security regulations. Those regulations require Mrs. Tucker to "[u]se the payments ... she receives only for the use and benefit of [her children] in a manner and for the purposes ... she determines, under the guidelines ... to be in the best interests of the beneficiary." 20 C.F.R. § 404.2035 (2003). Under the guidelines, the benefits "have been used for the use and benefit [of the children] if they are used for [their] current maintenance. Current maintenance includes cost incurred in obtaining food, shelter, clothing, medical care, and personal comfort items." 20 C.F.R. § 404.2040 (2003). After Mrs. Tucker has used the benefits consistent with those guidelines, "any remaining amount shall be conserved or invested on behalf of [the children]." 20 C.F.R. § 404.2045 (2003). Because these regulations require Mrs. Tucker to use the Social Security benefits for the use and

benefit of the children, Mr. Tucker argues that the benefits should be deducted from the children's reasonable expenses before the court determines each party's child support obligation.

■ It is well-settled that when a case falls within the child support guidelines, the guidelines "do not provide for the automatic application of Social Security benefits directly against the obligor's support obligation." *Goshorn v. Goshorn,* 154 Md.App. 194, 220, 838 A.2d 1247 (2003); *see also Drummond v. State,* 350 Md. 502, 519, 714 A.2d 163 (1998); *Ley v. Forman,* 144 Md.App. 658, 674, 800 A.2d 1 (2002); *Anderson,* 117 Md.App. at 483, 700 A.2d 844. "Indeed, the benefits are by no means an automatic credit or necessarily a dollar for dollar set off against a child support obligation." *Id.; see also Drummond,* 350 Md. at 519, 714 A.2d 163; *Ley,* 144 Md.App. at 674, 800 A.2d 1; *Anderson,* 117 Md.App. at 483, 700 A.2d 844.

The policy behind this approach is that "[t]o relieve a parent . . . of his or her support obligation because the child receives a benefit to which he or she is entitled from some other source would not ordinarily be consistent with [the parents' duty to support their children]." *Drummond,* 350 Md. at 520, 714 A.2d 163. Moreover, "[t]his approach . . . puts a child of separated parents in the same situation as a child of parents who are not separated because it allows the child to maintain the same standard of living as if the parents had not separated." *Id.* at 521, 714 A.2d 163.

The same reasoning applies to cases that are "above the guidelines." *See Ley,* 144 Md.App. at 674, 800 A.2d 1; *Anderson,* 117 Md.App. at 488–89, 700 A.2d 844. That the circuit court has the discretion to set the child support obligation when the parties' income exceeds the guidelines, and that it can base the amount of that obligation on the children's reasonable expenses if it so chooses, does not mean that the court must automatically reduce the children's reasonable expenses by the amount of Social Security benefits they receive before calculating the child support obligations. Nei-

ther Maryland law governing child support awards, nor the federal regulations governing Social Security benefits, require such a result. But the court may, in exercising its discretion, adjust the parties' total child support obligation by reducing it in some measure to reflect the Social Security benefits the children are receiving.

Consequently, we shall vacate the judgment of the circuit court because of the court's inclusion of the children's Social Security benefits in Mrs. Tucker's income, and we shall remand the case for that court to re-evaluate the effect of the Social Security benefits, if any, on the parties' child support obligations.

**JUDGMENT VACATED.**

**CASE REMANDED TO THE CIRCUIT COURT FOR MONTGOMERY COUNTY FOR PROCEEDINGS CONSISTENT WITH THIS OPINION.**

**COSTS TO BE PAID ONE–HALF BY APPELLANT AND ONE–HALF BY APPELLEE.**