JOHN E. O'CONNOR *v.* SHIRLEY ANN O'CONNOR

[No. 6, September Term, 1974.]

*Decided August 16, 1974.*

The cause was argued before MORTON, MOYLAN and MOORE, JJ.

*James J. Bierbower* for appellant.

*Charles Norman Shaffer*, with whom were *Shaffer, McKeever & Fitzpatrick* on the brief, for appellee.

MORTON, J., delivered the opinion of the Court.

The parties to this appeal were divorced on January 18, 1971, as a result of the filing of a decree in the Circuit Court for Montgomery County. Custody of the parties' six minor children was awarded to the wife and the decree provided that the husband should pay to the wife $850 per month as alimony and $850 per month for the support of the children.

In 1973 the mother filed a petition seeking increased alimony and child support. A hearing was held before a master.

The chancellor, after overruling the husband's exceptions to the master's report, signed an order, embodying the master's recommendations, in which the monthly alimony payments to the wife were increased to $950 and the monthly payments for support of the children were increased to $1350 beginning May 18, 1973.

The record indicates that at the time the order was signed, two of the six children had become emancipated. In the brief of the appellant it is asserted that another of the children, Gary Michael O'Connor, became 18 years old on February 20, 1974. As his first point in this appeal, the appellant urges that support payments for Gary "should now be terminated as he is no longer a minor," citing Chapter 651, Section 1, of the Acts of 1973. The appellee, in reply, asserts in her brief that since the effective date of the Act, which her counsel terms the "new 'eighteen-year old statute,' * * * was July 1, 1973, and Chancellor Cahoon's order increasing support accounts from May 18, 1973, it would logically follow that no problem is presented from May 18, 1973, to February 20, 1974, when Gary turned eighteen * * *." We are not clear as to the point appellee attempts to make unless it is to concede that under Section 1 of Chapter 651 child support payments are automatically terminated when the child, in this instance, Gary, attains the age of 18 years. Section 1, however, has to be read in conjunction with Section 51 of Chapter 651 which provides that "the provisions of this Act shall be construed only prospectively and shall not be applied * * * to any court decree, trust, will, deed or other instrument in effect prior to the effective date of this Act."

The Court of Appeals in *Monticello v. Monticello*, 271 Md. 168, had Section 51 before it for review and Judge Singley, speaking for the Court, announced, at 173-174:

> "* * * we are prepared to hold that the use of phrases such as 'infant' child, 'minor' child, 'during infancy,' 'during minority,' 'until attaining majority,' or 'until age of majority,' in an agreement or in a decree relating to child support dated prior to 1 July 1973, must have meant support until attaining age 21, in the absence of a clear expression of contrary intent, since this is the only meaning which could reasonably have been within the contemplation of the parties at the time such an agreement was executed, or in a judge's mind when such a decree was entered."

The original decree awarding the sum of $850 per month for the support and maintenance of the minor children of the parties was entered on January 18, 1971. Since there is nothing in the decree, or otherwise, to indicate a contrary intent, we think the decree comes squarely within the holding in *Monticello* that the use of the phrase "minor" children "in a decree relating to child support dated prior to 1 July 1973, must have meant support until attaining age 21 * * *." That the order, effective May 18, 1973, increasing the support payments for the minor children was not filed until December 13, 1973, and thus after the effective date of the Act, does not, in our opinion, alter this conclusion for it is the date of the original decree, not the date of the modifying decree, which controls. Thus, in spite of the cloudy position of the appellee on this issue, we can find no merit in the suggestion of the appellant that the case "be remanded so that the lower court will specifically terminate support for Gary Michael O'Connor as of February 20, 1974 * * *."

The appellant next attacks the amount of the award for the support of the children and in doing so centers his complaint largely upon the fact that some of the support monies will be used by the mother to finance the education of the remaining minor children in "parochial schools." The appellant points out that the chancellor did not order appellant in the prior divorce decree to pay for the private school education of the children but did order him to pay for the college expenses of the two older children who were in college at the time of the decree. Appellant argues that the chancellor below was without authority to increase support payments for the children, knowing that they were to continue in private schools, because under the so-called "law of the case" doctrine, (citing 4 M.L.E. §54) the chancellor below was bound to follow the holding of the chancellor in the original divorce proceedings. Whatever the "law of the case" doctrine may hold in other situations, the law in a child support case is always what is in the best interest of the child, *i.e.*, the needs of the child in view of the child's station in life, tempered only by the financial ability of the parents to provide the requisites of the child. *Wagshal v. Wagshal*, 249 Md. 143; *Fainberg v. Rosen*, 12 Md. App. 359.

It appears that prior to the divorce the older two children had been sent by the parents to secondary parochial schools, John Jay attending St. John's College High School and Kathleen attending Holy Child School. The appellant paid their tuition and expenses. Just prior to the initiation of the divorce proceedings, their son, Gary, had been enrolled in St. John's College High School and appellant paid his tuition for the first year. After the divorce, Gary continued to attend St. John's and the mother enrolled another son, Mark, in St. John's and another daughter, Sharon, in Holy Child School. The mother continued to pay the school expenses.

The record also shows that the appellant himself graduated from St. John's College High School as a youth. When asked if he had any objection to the boys being sent to St. John's, appellant replied: "No." He then elaborated by stating, "I didn't object to the boys going to St. John's anymore so than I would object to them going to Montgomery County schools." When asked if the school Sharon attends is "a good school in your opinion?", appellant replied: "Yes." It would appear, therefore, that the appellant has no objection to his children attending private schools but does object to paying the expenses for such education.

In assessing the appellant's position, consideration must be given to the relative financial standings of the father and mother. According to the master's findings:

> "Defendant's financial statement and testimony clearly show that defendant's annual taxable earned income in 1971 was $48,000.00, and in 1972 his earned and unearned taxable income was $118,000.00. Defendant owns and operates an electronic business corporation, from which he derives his substantial earned income, and sundry real estate investments from which he derives substantial unearned rental and dividend income. Defendant also has set up what he denominates as a reserve of $190,000.00 in cash to expand a real estate investment in the form of certificates of deposit and short-term Treasury bills which return substantial unearned interest in-

come. Defendant's overall present net worth is in excess of $1,400,000.00 and supports his financial ability to provide the educational needs as well as the support and maintenance of the minor children of the parties. Defendant's economic position comparatively is grossly superior to that of the plaintiff, whose net worth consists of $25,000.00 in savings and equity in a home purchased by her for $69,000.00, and $25,000.00 in furnishings purchased from the defendant. Said home now has a present estimated value of $81,000.00, houses plaintiff and the minor children of the parties, and has an unpaid mortgage balance of $55,000.00 payable in monthly installments at an annual expenditure of $6069.00.

Thus, it is at once apparent that there is a substantial disparity in the financial positions of the husband and wife and it is perfectly evident that the husband, with his overall resources and income, can well afford to finance the private school education of his children.

It is, of course, well established that a prior decree awarding child support, as in the case of alimony, will not ordinarily be disturbed or modified except upon a showing of a material or substantial change in the circumstances surrounding the parties. *Lott v. Lott*, 17 Md. App. 440. The parties agree that since the entry of the original divorce decree there has been no material change in the financial standing of the father. The mother contends, however, and we agree, that there has been a substantial change in the circumstances surrounding the educational requirements of their minor children. The appellant argues that the educational requirements of the minor children must have been contemplated by the chancellor at the time he entered the original decree of divorce with the accompanying order for alimony and support for the children. At that time, however, only the minor child, Gary, had been entered in a private secondary school and the other children were not of an age that they were eligible for secondary schooling. It is now apparent that Gary was to continue in St. John's, that

his brother is now attending the same school and that his sister is attending Holy Child School. Whether through inadvertence or otherwise this was not foreseen by the chancellor at the time he entered the original decree, the fact remains that there has been a change in the educational needs of the children and we think it is of such substantiality as to demonstrate a need for the modification of the original decree with respect to its provisions for support and maintenance of the children.

We are unpersuaded by the appellant's contention that this Court should not conclude that "private schooling below the college level is necessary as an incident of the child's station in life." While we do not endeavor at this time to formulate any general rule or principle regarding the responsibility of a father to provide his child or children with an education in the private secondary school sector, such as has been formulated in the case of a college education,[1] we believe that in the factual posture of this case, the chancellor below was not clearly erroneous in increasing the support payments for the minor children, knowing that a part of those funds would be expended to finance the education of the parties' minor children in parochial schools.

Both the father and the two older children had gone to secondary parochial schools. At the time the divorce proceedings were instituted, Gary had been enrolled at St. John's and the younger children were attending elementary parochial schools. The mother testified that she wanted the boys to attend St. John's in part because it was a military school under the direction of men and she desired the boys to have this atmosphere because their father was not at home to supervise and discipline them. She concluded by stating that she was simply following the pattern of education for the children which had been pursued for years during the time she and her husband were married. We think these are salutary reasons which have been advanced by the mother

---

1. *See Wooddy v. Wooddy,* 258 Md. 224; *Rhoderick v. Rhoderick,* 257 Md. 354; *Smith v. Smith,* 227 Md. 355.

and demonstrate an intelligent concern for the welfare and educational needs of the children. *See Fanning v. Warfield*, 252 Md. 18, 25.

The obvious financial ability of the father to pay for his childrens' private schooling, the pattern of education which had been set for the children prior to the divorce, the station in society occupied by the parties and the educational needs of the children create a set of circumstances, when considered in their totality, which clearly justify, in our opinion, the increased child support payments ordered by the chancellor.

We cannot agree with appellant's final contention that the chancellor "was clearly erroneous in ordering an increase in alimony." In view of the current economic climate, with inflationary pressures being felt by substantially every member of the community and considering the disparity in the financial status of the parties, we think the $100 monthly increase in alimony awarded by the chancellor was entirely reasonable.

*Order affirmed.*
*Costs to be paid by appellant.*