800 A.2d 1

Eileen LEY

v.

Jeffrey FORMAN.

No. 2467, Sept. Term 1999.

Court of Special Appeals of Maryland.

June 5, 2002.

John J. Condliffe (Shub–Condliffe & Condliffe, P.A., on the brief) Towson, for appellant.

Phyllis Erlich, Towson, for appellee.

Argued before MOYLAN,\* KRAUSER, and JOHN J. BISHOP, (Retired, specially assigned) JJ.

BISHOP, J.

Appellant, Eileen Ley, filed in the Circuit Court for Baltimore City a Motion to Increase Child Support against Appellee, Jeffrey Forman. (Appellant's Motion for Change of Name from Eileen Ley Rivera to Eileen Ley, for purposes of this appeal, was granted on April 4, 2002.) A copy of the court's order was not included in the record extract, as required by Md. Rule 8–501; however, we were able to determine that the court rendered an oral decision in open court on June 29, 1999, and issued a written order thereafter, which was entered on the docket on July 16, 1999. Also, the trial judge sent a letter to counsel to explain his ruling. A transcript of his oral ruling and a copy of the explanatory letter were included in the record extract.

## FACTUAL BACKGROUND

Appellant was granted an absolute divorce from Appellee on April 13, 1995. The parties were given joint care, custody and

---

\* Moylan, J., participated in the hearing and conference of this case while an active member of this Court; he participated in the adoption of this opinion as a retired, specially assigned member of this Court.

guardianship of their minor daughter, Maria, who was born on January 1, 1992. Appellant was granted primary physical custody. Appellee was ordered to pay alimony in the amount of $1,000 per month from December 1, 1994 through November 1, 1995, and from November 1, 1995 through May 1, 1998, he was ordered to pay $2,000 per month in alimony.

Appellee was ordered to pay child support in the amount of $250 per month from December 1, 1994 through October 31, 1995 and $500 per month from November 1, 1995 until the first to occur of any of the following events: (1) the death of the child or appellee, (2) the marriage of the child, (3) the child's becoming self-supporting, or (4) the child's arrival at age eighteen. The Judgment specified that "[o]n or before May, 1998, the parties will review and attempt to readjust the amount payable for child support."

On May 18, 1998, Appellant filed an Amended Motion To Increase Child Support And Modify Visitation, to which Appellee filed a response. On June 17, 1998, Appellant filed an Amended Motion To Increase Child Support And Modify visitation, in which Appellant requested that Appellee provide health insurance coverage for Maria in Maryland and that Maria's private school tuition be paid by the parties proportionate to their incomes. In response, Appellee alleged that Appellant had decided unilaterally to send Maria to Bryn Mawr, a private school.

In March 1999, the month following a pre-trial conference, Appellee voluntarily increased the child support from $500 to an average of approximately $900 per month.

Appellant testified that she has had congenital degenerative myopia since birth, wears contact lenses to help give contrast and definition to colors, and uses large print and voice access on computers. In addition to walking, she uses taxis and buses for transportation. She receives social security disability benefits. She has an undergraduate degree from Harvard University and attended Wharton Business School.

In 1998, she received $15,324 in social security benefits, $88 in interest income, $269 in refunds, and $8,555 in net business

income. Appellant's total income, not including alimony which ceased in May 1998, was $24,236. She testified that Maria also receives social security disability benefits, which amount to about one half of what Appellant receives. Appellant testified that she uses Maria's disability payments for "disability related expenses" such as hiring readers for Maria and drivers to take her to school.

Dr. Forman, who attended Harvard University, is a physician who practices pulmonary and intensive care medicine in Virginia. He is one of 27 or 28 full partners in a medical partnership. He owns an equal interest in the partnership and is paid generally in accordance with his gross billing less expenses and less a shared subsidy to increase the earnings of general practitioners. Dr. Forman's 1998 income tax return reflects that he earned taxable wages in the amount of $162,452 and that his Medicare wages totaled $172,452.

At a hearing on March 31, 1995, the parties reaffirmed their original agreement, that Appellee would continue to maintain health insurance for Maria "so long as she is eligible under the policy", a commitment that was incorporated, but not merged, in the judgment of absolute divorce. At the hearing on June 29, 1999, on Appellant's motion to increase child support, Appellee testified extensively that the health insurance coverage he provides for Maria is with a health maintenance organization (HMO) in which he participates that provides coverage in Maryland for emergency or urgent care only, but not for general medical coverage. As a result, Maria must obtain her annual physical examinations and immunizations in Virginia.

Appellee testified that a preferred provider option (PPO) is available, at additional cost, which would provide health insurance coverage for Maria's general medical expenses in Maryland. He did not purchase the PPO plan because "it is not a very good plan. In fact the current plan ... economically— makes much better sense."

Appellee testified that, since Maria does not have many illnesses, he would be willing to pay up to $200, annually, to

cover doctors' visits for minor medical problems such as colds or sore throats. He testified that Maria has "mild asthma" and "it would be advisable that she have an inhaler with her at all times." Appellee did notice that Maria did not use her inhaler at all during one summer she spent with him in Virginia.

We will provide additional facts, *infra.*

## ISSUES PRESENTED

Appellant raises the following five issues:

I. Did the court err in its determination of the parties' incomes?

II. Did the court err, as a matter of law, in granting Appellee a credit for social security disability payments received by Appellant on behalf of Maria, against his child support obligation

III. Did the court abuse its discretion in granting Appellee a credit against his child support obligation for social security disability payments received by appellant as custodian of their minor child?

IV. Did the court abuse its discretion in failing to award child support retroactively?

V. Did the court err in refusing to require Appellee to provide health insurance which provides regular medical coverage in Maryland?

We reverse Issues I, II, III, and V, and remand for further consideration in accordance with this opinion. We remand Issue IV without reversing or affirming.

On cross-appeal, Appellee raises two issues:

VI. Did the court err in requiring appellee to contribute to the private school expenses of Maria?

VII. Did the court err in modifying the visitation schedule without a hearing and without taking additional testimony.

In light of our decision on Appellant's Issue I, we remand Appellee's Issue VI for reconsideration in accordance with this opinion. We find no error as to Issue VII.

## STANDARD OF REVIEW

When presented with a motion to modify child support, a trial court may modify a party's child support obligation if a material change in circumstances has occurred which justifies a modification. Whether to grant a modification rests with the sound discretion of the trial court and will not be disturbed unless that discretion was arbitrarily used or the judgment was clearly wrong. *Dunlap v. Fiorenza*, 128 Md.App. 357, 363, 738 A.2d 312, *cert. denied*, 357 Md. 191, 742 A.2d 520 (1999). When an action has been tried without a jury, we will review the case on both the law and the evidence. We will not set aside the judgment of the trial court on the evidence unless clearly erroneous, and we give due regard to the opportunity of the trial court to judge the credibility of the witnesses. Md. Rule 8–131(c).

## DISCUSSION

### I.

Appellant contends that the trial court failed to make specific findings of fact on the incomes of the parties and, instead, relied on approximations and estimations. We agree.

At the conclusion of the June 29, 1999 hearing, the judge, in his oral opinion, found that there was a material change in circumstances resulting from "[a]t the very least a $40,000 increase in Dr. Forman's income, if not a $70,000 increase." The judge concluded that Dr. Forman earned "at least $160,000 a year, and that's at least $10,000 less than the $172,000 that is probably closer to his real income. But $160,000." The trial judge eliminated a number of items from the list of Maria's expenses that was admitted into evidence. He concluded, without considering the cost of her education, that her expenses were $1,226.50 per month. Next he sub-

**666**

tracted the $638 per month in social security benefits received by Maria from the total monthly expenses. He concluded that Bryn Mawr was an appropriate school for Maria. The judge then stated, *inter alia:*

[The Court]: The support award at the present time for the daughter, commencing in the month of July, is $1250 a month, plus $500 a month for Bryn Mawr School. Or a total of $1750 a month.

Wait a minute. That's not correct. That is correct. Did I say $1250 a month?

[Counsel for Plaintiff]: Yes, Your Honor.

[The Court]: What I did was I took the—I found the basic child support to be somewhat higher than I am indicating. $1376. I added to that $500, so I got $1876, and I subtracted $650 from that, and I came to a figure of $1250.

I find the basic child support at $1250 for as long as Bryn Mawr is $500 a month.

If Bryn Mawr should go to $1000 a month, I believe that the child support should be increased to $1750 a month.

Now let me go over that again, because I was—my numbers were there, but my head wasn't with my numbers.

I found that the basic obligation should be $1376.50.

I increased that by $500 a month for Bryn Mawr, on the scholarship. So that I got $1876.50. I subtracted from that approximately $650. It doesn't come out quite right, but $1226.50, so I bumped that up to $1250. That's what I did.

If it goes up, and it is $12,000 a year for Bryn Mawr, rather than $6,000 for Bryn Mawr, it would be an additional $500 a month that she would have to pay.

[Counsel for Plaintiff]: Can I ask a question?

[The Court]: So $1750 a month would be the child support.

[Counsel for Defendant]: I have a question. Did you apportion the 1376 plus the 500 which gives 1876? Shouldn't that be the total for both of the parents, and then you should take the 86 percent of that? If you find the child needs $1376.50 plus 500 for Bryn Mawr, which is the

total payment that both of them would have to pay, shouldn't you then apportion it so that the Dad would pay 87 percent of that figure?

[The Court]: Okay. You are correct. So the 87 percent of that responsibility turns out to be approximately $1000—$1066 a month. You are correct, Miss Erlich. And in the event—so that if it goes up—if the price of the school goes up to $1000 a month, the court would increase the order to $1501.61 from $1066.62. That is correct?

I found that Dr. Forman had approximately 87 percent obligation of the total, and that the total obligation was $1376.50. 87 percent of that was $1226.50. Wait a minute. But the court believes—wait a minute. That's not what I did. Whether I am right or wrong, I am confusing—I am even confusing myself.

The court is mindful that it is not required to make a straight deduction of social security payments received on Maria's behalf in the amount of $650. But the court believes that this should be applied directly to reduce Maria's needs to the present need of $1226.50.

The court finds that Dr. Forman has 87 percent of the responsibility, and therefore, so long as Bryn Mawr is at a figure of $500 a month, his responsibility would be $1066.62 a month. In the event that Bryn Mawr School should increase at some point to a figure which I cap at $1000 a month, the court would change its support to increase Dr. Forman's obligation to $1501.62 a month.

\* \* \*

In an attempt to clarify his oral opinion, the judge sent a letter to the attorneys which demonstrates his reliance on approximations and estimations:

Since my opinion was confusing to me as well as undoubtedly to each of you, I do believe a letter is in order. During the luncheon recess, I had written out some notes and my confusion came because I really did not follow my notes accurately. What I did was that I reviewed Dr. Forman's income and concluded that this income was at least $160,000

a year. This made a monthly income of more than $13,000 a month. I looked at Ms. Rivera's [Appellant's] income and concluded that her monthly income was $1250 non-taxable income from Social Security and $750 per month earnings, or a total of $2000 a month. The combined incomes are well over the child-support guidelines, and are approximately $15,000 a month gross income. An extrapolated guideline from the guidelines would be support in the amount of approximately $1600 a month. I then reviewed Maria's needs from Defendant's exhibit 2 and found that her non-school needs were in the amount of $1,376.50 a month. I looked at her needs list and deleted $15 from her food expense, $45 from gifts and $160 from her medical expense for a total deletion of $220 a month, therefore concluding that Maria's needs were in the amount of approximately $1376.50. I increased this number after reviewing the *[Witt] v. Ristaino* case in 118 Md.App. 155[, 701 A.2d 1227] (1997) by $500 a month for Bryn Mawr tuition and concluded that her total needs were $1876.50. I then deducted from that amount approximately $650 for her Social Security income, rounding it off, and it came to a present need of $1226.50. I found that Dr. Forman had 87% of this responsibility; and therefore so long as the Bryn Mawr school is at a figure of $500 a month for expense, Dr. Forman's responsibility would be $1,066.62. In the event that the Bryn Mawr School should increase at some point, capped at $1000 a month, the court would change its support order to increase Dr. Forman's obligation to a maximum level of $1566.62.

* * *

The cardinal rule of statutory interpretation is to ascertain and effectuate legislative intent. *Oaks v. Connors,* 339 Md. 24, 35, 660 A.2d 423 (1995). To this end, we examine the words of the statute and, when the statute to be construed is a part of a statutory scheme, we discern the legislative intent in light of the entire statutory scheme. *GEICO v. Insurance Comm'r,* 332 Md. 124, 131–32, 630 A.2d 713 (1993). We are mindful that the statutory scheme must be examined as a

whole, and the relationship between its various provisions must be considered. *Reuter v. Reuter,* 102 Md.App. 212, 224, 649 A.2d 24 (1994). Ordinarily, when the words of the statute are clear and unambiguous, according to their commonly understood meaning, we end our inquiry there. *Id.* Construction of a statute that is unreasonable, illogical, unjust, or inconsistent with common sense should be avoided. *D & Y, Inc. v. Winston,* 320 Md. 534, 538, 578 A.2d 1177 (1990).

Section 12–201(b) of the Family Law article defines income for purposes of the child support guidelines, as "actual income of a parent, if the parent is employed to full capacity." "Actual income" is defined as "income from any source." Md. Fam. Law Code Ann. § 12–201(c)(1). "For income from self-employment, rent, royalties, proprietorship of a business, or joint ownership of a partnership or closely held corporation, 'actual income' means gross receipts minus ordinary and necessary expenses required to produce income." Md. Fam. Law Code Ann. § 12–201(c)(2).

Section 12–203(b) requires that income statements of the parents be verified with documentation of both current and past actual income. The rules pertaining to verification of actual income do not apply in cases where the court rules that a parent is voluntarily impoverished. But, in cases where the parents are employed, their actual incomes can be "verified." *Reuter v. Reuter,* 102 Md.App. 212, 225, 649 A.2d 24 (1994).

When it adopted the child support guidelines in 1989, the General Assembly intended to comply with a federal mandate requiring that guidelines be established and that they be "based on specific descriptive and numeric criteria and result in a computation of the support obligation." *See* 42 U.S.C. §§ 651–667 (1982 & 1984 Supp. II). *See also Voishan v. Palma,* 327 Md. 318, 321, 609 A.2d 319 (1992); *Reuter,* 102 Md.App. at 224–26, 649 A.2d 24. Child support guidelines were also intended, *inter alia,* to improve the consistency and equity of child support awards, and to increase efficiency in their adjudication. *Petrini v. Petrini,* 336 Md. 453, 460, 648

A.2d 1016 (1994); *Voishan,* 327 Md. 318, 321, 609 A.2d 319 (1992).

The clear intention of the legislature requires the trial court to consider actual income and expenses based on the evidence. The court must rely on the verifiable incomes of the parties, and failure to do so results in an inaccurate financial picture. The trial court's determination of the parties' incomes, *sub judice,* was erroneous. We remand with instructions that the court determine the actual incomes of the parties based on the evidence presented. Our holding will necessarily impact on other decisions made by the trial court.

## II. & III.

 Appellant argues that the trial court erred in granting Appellee a credit against his child support obligation for social security benefits received by Appellant on behalf of Maria, and when it deducted Maria's social security disability payment of $650 per month from the total amount calculated as Maria's monthly need. Appellant asserts that this dollar-for-dollar credit violates the Court of Appeals' holdings in *Drummond v. State,* 350 Md. 502, 714 A.2d 163 (1998) and *Voishan v. Palma,* 327 Md. 318, 609 A.2d 319 (1992). Alternatively, Appellant contends that even if the trial court had the discretion to reduce appellee's child support obligation by the total amount of social security benefits received by Maria, the trial court's action was an abuse of discretion.

In *Drummond,* Mr. Drummond argued that he was entitled to a credit against his child support obligation for the social security disability payment then being made directly to his minor child. The Court of Appeals recognized that § 12–202(a)(2)(ii) of the Family Law article grants a trial court the discretion to deviate from the guidelines when their application would be unjust or inappropriate and that the receipt of income by a child may be a relevant factor in making such a determination. Absent a determination that application of the guidelines would be unjust or inappropriate, the Court of Appeals held that an automatic credit for social security

disability dependency benefits received by a child is unavailable to the non-custodial parent under the Maryland child support guidelines. In support of its decision, the Court relied upon the following "often-enunciated policies of this State regarding child support and children generally:"

A parent has both a common law and statutory duty to support his or her minor child. We previously have noted the rationale underlying a parent's obligation of support: "The duty of parents to provide for the maintenance of their children, is a principle of natural law; an obligation laid on them not only by nature herself, but by their own proper act, in bringing them into the world: ... By begetting them therefore they have entered into a voluntary obligation to endeavor, as far as in them lies, that the life which they have bestowed shall be supported and preserved."

To relieve a parent entirely of his or her support obligation because the child receives a benefit to which he or she is entitled from some other source would not ordinarily be consistent with this fundamental principle of family law.

Moreover, Maryland has adopted the Income Shares Model in calculating child support awards. As Judge Chasanow opined for the Court, "the conceptual underpinning of this model is that a child should receive the same proportion of parental income, and thereby enjoy the standard of living, he or she would have experienced had the child's parents remained together. When a parent becomes disabled and thereafter receives social security disability benefits, his or her child is generally entitled to social security disability dependency benefits regardless of whether the child's parents remain together or separate. It is the child, not the parent, who is entitled to the social security disability dependency benefit pursuant to 42 U.S.C. § 402(d). It would be inconsistent with the Income Shares Model to give a child of separated parents the benefit of only social security disability dependency payments when a child, whose parents remained together, has the benefit of both his own direct social security disability dependency payment and the indirect benefit of the social security disability

payment received by the parent. Our approach gives a child whose parents have not remained together the benefit of both the social security dependency benefit and the parent's social security disability benefit through the award of child support.

This approach also puts a child of separated parents in the same situation as a child of parents who are not separated because it allows the child to maintain the same standard of living as if the parents had not separated. *Drummond,* 350 Md. at 520–21, 714 A.2d 163(citations omitted).

For the reasons articulated above, and because the best interest of the child is of paramount importance in Maryland, the Court concluded, in *Drummond,* that an obligor parent should not receive an automatic credit toward his or her child support obligation in an amount equal to the benefit payments received by his or her minor child, who is entitled to the payments under federal law. In reaching its conclusion in *Drummond,* the Court relied, in part, on *Voishan v. Palma,* 327 Md. 318, 609 A.2d 319 (1992).

*Voishan* is notable because it was the first time the Court addressed the child support statutes enacted in 1989. In *Voishan,* the trial court increased the child support obligation of a father from $700 to $1550 per month. At trial, evidence was presented to show that the parties' combined adjusted actual income was $175,000 per year, or $14,583 per month. This amount exceeded the highest income provided for in § 12–204(d) and, therefore, the court was permitted to use its discretion in setting the amount of child support.

Although *Voishan* did not involve the issue of whether a child support obligor is entitled to a credit against his or her child support obligation for benefits received by a child, it did offer useful instruction for cases, such as the case *sub judice,* which involve combined adjusted actual income in excess of the highest income provided for in the guidelines.

The father in *Voishan* argued that the maximum basic child support obligation listed in the guidelines not only applied to

combined monthly incomes of $10,000, but also to those exceeding $10,000 per month. The Court of Appeals disagreed and held that, although the maximum basic child support obligation listed in the guidelines "could provide the presumptive *minimum* basic award for those with combined monthly incomes above $10,000," the legislature did not intend to cap the basic child support obligation at the maximum amount in the guidelines. *Voishan,* 327 Md. at 325–26, 609 A.2d 319. The Court stated that the father's approach created an artificial ceiling and defeated the guidelines' policy that a child enjoy a standard of living consonant with what he or she would have experienced had the parents remained married.

The father in *Voishan* argued, in the alternative, for restricted judicial discretion in above-guidelines cases. He contended that the trial judge should have extrapolated from the child support guidelines to determine the support obligation. Again, the Court disagreed and held, instead, that a trial judge should consider the underlying policies of the guidelines and strive toward congruous results. The Court recognized that the legislative history indicated that the General Assembly did not intend to impose a maximum percentage of income or any similar restraint on a judge's discretion in setting awards where the parents' combined adjusted actual income exceeds $10,000 per month.

Neither *Drummond,* a case within the child support guidelines, nor *Voishan,* an above-guidelines case, resolves the issue presented in the case *sub judice.* Most recently, in *Anderson v. Anderson,* 117 Md.App. 474, 700 A.2d 844 (1997), we had the opportunity to address the specific issue of whether a child support obligor was entitled to a credit toward child support in the amount of the Social Security benefits received by a minor child. Although that case was subsequently vacated and remanded by the Court of Appeals for lack of a final judgment, *Anderson v. Anderson,* 349 Md. 294, 708 A.2d 296 (1998), the substantive issue presented was never addressed by the high court. We find the reasoning set in *Anderson,* 117 Md.App. 474, 700 A.2d 844 (1997), to be particularly instructive in the case at hand.

In *Anderson,* an above-guidelines case, the father asserted that he was entitled to a dollar-for-dollar credit against his child support obligation in the amount of Social Security benefits received directly by his children. We disagreed. Writing for this court, Judge James R. Eyler observed that the Social Security benefits received by the children are "an entitlement belonging to the children and not to [their father]." *Anderson,* 117 Md.App. at 480, 700 A.2d 844. Judge Eyler examined Maryland's comprehensive statutory scheme governing child support awards and the basic premise underlying the statutory scheme as discussed in *Voishan.* Specifically, Judge Eyler recognized that the guidelines do not provide for application of Social Security benefits directly against an obligor's support obligation, nor do the guidelines provide that the benefits paid on behalf of a minor child shall be included in the income of the custodial parent. *Anderson,* 117 Md.App. at 483, 700 A.2d 844. Judge Eyler noted that in cases where "the combined adjusted actual income of the parents exceeds $10,000 per month, the trial court is directed to use its discretion in setting the amount of child support." 117 Md.App. at 482, 700 A.2d 844. In exercising its discretion, "the trial court is not required to use a strict extrapolation method to determine support in a non-guidelines case, but may resort to any other rational method that promotes the general objectives of the child support guidelines and considers the particular facts of the case before it." *Anderson,* 117 Md.App. at 478, 700 A.2d 844 (relying on *Voishan,* 327 Md. at 328–29, 609 A.2d 319).

Despite the fact that the guidelines do not expressly provide for the treatment of Social Security benefits paid directly to or on behalf of minor children, we held that "trial courts may consider such benefits when determining whether to deviate from the guidelines under § 12–202(a)(2), or when setting the amount of child support in accordance with § 12–204(d)." *Id.* at 484, 609 A.2d 319.

With respect to the setting of child support pursuant to § 12–204(d), Judge Eyler wrote:

In *Voishan,* the Court of Appeals noted that, implicit in the Legislature's reliance on judicial discretion in such cases is that

"at the very high income levels, the percentage of income expended on children may not necessarily continue to decline or even remain constant because of the multitude of different options for income expenditure available to the affluent. The legislative judgment was that at such high income levels judicial discretion is better suited than a fixed formula to implement the guidelines' underlying principle that a child's standard of living should be altered as little as possible by the dissolution of the family." 327 Md. at 328, 609 A.2d 319 (quoting from amicus curiae brief submitted by Attorney General). Accordingly, in *Voishan,* the Court of Appeals upheld a child support award based upon what the trial court determined to be "the reasonable expenses of the child," even though such an award exceeded that which would have resulted from a strict extrapolation method. The Court cautioned that in exercising its discretion the trial court should not ignore the general principles from which the schedule was derived. *Id.* It further noted that while strict extrapolation from the guidelines may provide a useful guide to the trial court, the court "may also exercise [its] independent discretion in balancing 'the best interests and needs of the child with the parents' financial ability to meet those needs. Factors which should be considered when setting child support include the financial circumstances of the parties, their station in life, their age and physical condition, and expenses in educating the children." 327 Md. at 329, 609 A.2d 319 (quoting *Unkle v. Unkle,* 305 Md. 587, 597, 505 A.2d 849 (1986)).

In exercising its discretion, the trial court must be mindful that Maryland's child support statute is a response to "the federal call for child support guidelines [that] was motivated in part by the need to improve consistency of awards." 327 Md. at 331, 609 A.2d 319. The guidelines establish a rebuttable presumption that the maximum support award under the schedule is the minimum that should

be awarded in cases above the schedule. 327 Md. at 331–32, 609 A.2d 319. "Beyond this the trial judge should examine the needs of the child in light of the parents' resources and determine the amount of support necessary to ensure that the child's standard of living does not suffer because of the parents' separation." 327 Md. at 332, 609 A.2d 319.

*Anderson,* 117 Md.App. at 487–88, 700 A.2d 844.

■ The determination of the amount sufficient to meet Maria's needs in light of her parents' financial resources is a decision left to the sound discretion of the trial court. In exercising that discretion, however, a trial judge must implement the guidelines' underlying principle that a child's standard of living should be altered as little as possible by the dissolution of the family.

The trial judge stated that he was "mindful that [the trial court] is not required to make a straight deduction of social security payments received on Maria's behalf in the amount of $650." He then proceeded to give Appellant a dollar-for-dollar credit against his child support obligation equal to the total amount of benefits received by Maria. The trial judge never articulated why Maria's standard of living would not suffer as a result of applying the credit against Appellant's child support obligation. *Voishan* and *Anderson* cautioned trial judges, in exercising their discretion, that they should not ignore the general principles from which the child support schedule was derived. We cannot overstate the importance of a trial judge articulating on the record the reasons in support of his or her exercise of discretion, particularly in an area as important as this.

We reverse and remand issues II and III to the trial court for further proceedings consistent with this opinion. On remand, the trial judge, in exercising discretion, should be mindful of the general principles from which the guidelines were derived and should articulate on the record his or her findings of how the child support award, and the handling of the social security benefits, serve the best interests of Maria.

## IV.

 Appellant claims that the trial court abused its discretion when it failed to make the child support obligation retroactive to May 1998 because the parties had entered into a contract pursuant to which they agreed that, "on or before May, 1998," they would "review and attempt to readjust the amount payable for child support." The trial court denied the request stating:

> The court's award for support will not be retroactive, because I think it is a subject of dispute. There was an attempt to resolve it, a good faith attempt on both sides, and the court believes that in its discretion, the new support order should start on July 1st, 1999.

 Maryland law does not permit a court to modify a child support award prior to the date of the filing of a motion for modification. Md. Fam. Law Code Ann. § 12–104 (1999 Repl.Vol., 1999 Supp.) provides:

> (a) *Prerequisites.*—The court may modify a child support award subsequent to the filing of a motion for modification and upon a showing of a material change of circumstances.
>
> (b) *Retroactivity of modification.*—The court may not retroactively modify a child support award prior to the date of the filing of the motion for modification.

Section 12–204(b) makes clear, however, that it is within the discretion of the trial court to determine whether and how far retroactively to apply a modification of a party's child support obligation up to the date of the filing of the petition for said modification.

We shall neither reverse nor affirm the trial court's decision on this issue. On remand, the trial court should address this issue and determine whether and how far to apply a modification in light of the requirements in § 12–104.

## V.

 Appellant's final contention is that the court erred in refusing to require Appellee to provide health insurance cover-

age for Maria that provides regular medical coverage in Maryland. At the March 31, 1995 hearing, counsel for Appellant stated that "Dr. Forman will continue to maintain health insurance for the minor child so long as she is eligible under the policy." At the hearing on June 29, 1999, Dr. Forman testified that the policy referenced at the 1995 hearing was a health insurance policy from Johns Hopkins Hospital. At the 1999 hearing, Dr. Forman no longer maintained the Johns Hopkins policy, but, rather, maintained HMO coverage for Maria through his medical practice in Virginia. It is undisputed that the HMO does not provide coverage for Maria's well visits in Maryland, but only in Virginia. The HMO covers emergency and urgent care outside of the Virginia area. Dr. Forman testified that Maria, who has "mild asthma," receives her pre-school physicals and vaccinations in Virginia, and that he would be willing to pay up to $200 per year for doctor visits for minor illnesses.

A PPO which would provide health insurance coverage for Maria's general medical expenses in Maryland is available to Dr. Forman, for additional cost, but Dr. Forman believes the HMO makes better sense economically.

The trial court concluded:

Now with respect to the medical insurance, Dr. Forman indicated that he has maintained the same medical insurance. I am going to accept him at his word, and the medical insurance will be that he is required to continue his present insurance that he has, covering Maria, and that he is to pay the first $200 annually, of any deductible.

In his attempt to clarify his decision, the trial judge directed that Dr. Forman pay the first $200 of expenses incurred by Appellant for Maria's medical needs, not covered by insurance.

The trial judge erred in concluding that Dr. Forman "maintained the same medical insurance" at the time of the 1999 hearing that he had maintained in 1995. The uncontroverted evidence was that Dr. Forman had switched from the Johns Hopkins' health plan to an HMO in Virginia. The trial court failed to examine whether the change in health insurance

coverage constituted a breach of the 1995 agreement and to consider Maria's best interests. We reverse and remand for further proceedings consistent with this opinion.

## VI.

In his cross-appeal, Dr. Forman contends that the trial court erred in ordering him to contribute to the expenses of Maria's private education. He did not object to Maria's enrollment at a private school, but objected to her enrollment at the Bryn Mawr School. He contends that Bryn Mawr is an elitist school and that a parochial school would be a better "value."

Section 12–204(i) of the Family Law article provides, in part:

(i) School and transportation expenses.—By agreement of the parties or by order of court, the following expenses incurred on behalf of a child may be divided between the parents in proportion to their adjusted actual incomes: (1) any expenses for attending a special or private elementary or secondary school to meet the particular educational needs of the child;

We examined the phrase "particular educational needs of the child" in *Witt v. Ristaino*, 118 Md.App. 155, 701 A.2d 1227 (1997):

From our review of Maryland cases prior to the enactment of the Child Support Guidelines and of cases from other jurisdictions interpreting a similar statutory provision, it is clear the law in Maryland prior to the Guidelines can be reconciled with the new statutory language. Prior to the Guidelines, we declined to give a hard and fast rule for determining whether a non-custodial parent should be obligated to pay for his or her children's private school education. Rather, we noted, trial courts should evaluate various factors on a case-by-case basis, taking into consideration the best interests of the child "tempered only by the financial ability of the parents" to pay for the education. In *O'Connor* [*v. O'Connor*, 22 Md.App. 519, 323 A.2d 632

(1974) ], for instance, we considered such factors as the children's history of education, their "station in society," as well as their educational needs. Although these cases were not rejected by the Legislature when it enacted the Guidelines, we realize that we must give the trial courts further guidance in interpreting what are a child's "particular educational needs."

We decline to interpret section 12–204(i)(1) under the narrow view, as advocated by appellant, that in order for a trial court to order that special or private educational expenses for the child be considered as support subject to the Guideline considerations, the child must be laboring under some sort of disability or high ability. This interpretation would render too strict a standard for parents whose children have special needs but are by all other accounts normal or average students. Further, the law in Maryland child support cases has always been what is in the best interests of the child. The Child Support Guidelines do not abrogate this doctrine but rather, reinforce it. It would be nonsensical to allow a child to remain in a special or private school after the parents' separation only if he or she qualified for "special education" services. To state it another way, a trial court should consider whether to attend or remain in a special or private school is in the child's best interest and whether and how parents are required to contribute to that expense.

Accordingly, we hold that the trial courts should consider this non-exhaustive list of factors when determining whether a child has a "particular educational need" to attend a special or private elementary or secondary school. First, courts should consider the child's educational history, such as the number of years the child has been in attendance at that particular school. While we give no minimum of time to consider, it seems evident that a child who has attended a private school for a number of years may have a more compelling interest in remaining in that school than a child who has yet to begin his or her education at the private institution. Further, as part of the history factor, courts

should evaluate the child's need for stability and continuity during the difficult time of the parents' separation and divorce. This factor also contemplates the premise of the Income Shares Model that "the child should receive the same proportion of parental income he or she would receive if the parents lived together."

Second, courts should look at the child's performance while in the private school. It is often in a child's best interest to remain in a school in which she or he has been successful academically. Third, courts should consider family history. That is, a court should look at whether the family has a tradition of attending a particular school or whether there are other family members currently attending the school. Part of this consideration can include a review of the family's religious background and its importance to the family unit, if the private school is a religiously-oriented institution.

Fourth, courts should consider whether the parents had made the choice to send the child to the school prior to their divorce. Although the statute provides that expenses of a special or private school may be divided "by *agreement of the parties or by order of court,*" often there is no express agreement as to the child's schooling. Consideration should be given, however, to the prior decision and choice of the parents to send the children to a private institution as the intent of the parties before the separation is instructive.

Fifth, courts should consider any particular factor that may exist in a specific case that might impact upon the child's best interests.

Finally, courts must take into consideration the parents' ability to pay for the schooling. While not the primary factor, it is vital for a court to consider whether a parent's financial obligation would impair significantly his or her ability to support himself or herself as well as support the child when the child is in his or her care.

*Witt,* 118 Md.App. at 168–171, 701 A.2d 1227 (citations omitted).

■ The trial judge considered various factors and Maria's best interest when determining whether Maria had a particular educational need to attend Bryn Mawr. The trial court clearly considered and rejected Dr. Forman's arguments against his daughter's enrollment at Bryn Mawr and ruled:

> I find that Bryn Mawr is an appropriate school for this young woman. She has been there for a year; that her mother applied, she got in. Ms. Rivera says it's a school for all women. It, in her view, was a better school than the other school; that it had more computers; it had a smaller class size.

> I don't believe the mother is putting her daughter in this school to injure the father. I believe the mother is putting her daughter in the school because she believes it's the best school.

> And the court believes it is an appropriate school when I consider the financial ability of the family.

The court then apportioned the amount of tuition between the parties in an amount equal to the percentage of their child support obligations.

There is nothing in the record to suggest that the trial court erred in determining that Maria has a particular educational need to attend Bryn Mawr. The judge was presented with evidence of Maria's academic performance including her report card. Dr. Forman testified that he intended to send his son, by his current marriage, to a private school in Virginia. There was also evidence to show that the parties agreed that Maria should receive a private education, but that they disagreed about which school she should attend.

Nevertheless, one of the factors that must be considered in determining whether a child has a particular educational need to attend a private school is the financial ability of the parents to pay for the education. That factor will need to be reconsidered in light of our ruling on Appellant's first issue. Accordingly, we remand Issue VI for further consideration consistent with this opinion.

## VII.

Appellant filed a motion to alter or amend the court's visitation ruling. She sought to change the trial court's ruling entitling Dr. Forman to 10 days of visitation with Maria during the Christmas and New Year vacation. Appellant requested that the order be amended to reflect that the Christmas/New Year vacation be evenly divided between the parties. Dr. Forman filed a response to the motion. The court (Holland, J.) granted the motion so that Dr. Forman "will be entitled to visitation with the minor child for one half of the child's Christmas holiday from school each year, with any odd days resulting in a one half day visitation."

Dr. Forman complains that the motion to alter or amend was decided by Judge Holland rather than Judge Waxter, the trial judge who heard the underlying case. He further complains that, pursuant to Md. Rule 2–311(e), there should have been a hearing on the motion. We do not reach either of these issues because Dr. Forman failed to object and, as a result the issues are not preserved for our review. Md. Rule 8–131(a)("Ordinarily, the appellate court will not decide any . . . issue unless it plainly appears by the record to have been raised in or decided by the trial court. . . .").

**JUDGMENT REVERSED ON ISSUES I, II, III AND V; CASE REMANDED FOR FURTHER CONSIDERATION CONSISTENT WITH THIS OPINION; REMANDED ON ISSUE IV WITHOUT AFFIRMANCE OR REVERSAL; REMANDED ON ISSUE VI WITHOUT AFFIRMANCE OR REVERSAL FOR FURTHER CONSIDERATION CONSISTENT WITH THIS OPINION; JUDGMENT AFFIRMED ON ISSUE VII. COSTS TO BE PAID BY APPELLEE.**