685 A.2d 175

Bryan HINKLE, Appellant,

v.

Susan HINKLE, Appellee.

Superior Court of Pennsylvania.

Argued Oct. 1, 1996.

Filed Oct. 25, 1996.

Josep M. Wymard, Pittsburgh, for appellant.

Before KELLY, JOHNSON and OLSZEWSKI, JJ.

OLSZEWSKI, Judge:

Following approximately nine years of marriage, Bryan Hinkle (Father) and Susan Hinkle (Mother) were divorced in 1990. Two children, Dustin and Jared, were born of this failed marriage. During the course of the marriage, Father was employed as a professional football player in the National Football League (NFL) as a Pittsburgh Steeler. The parties entered into an agreement dated April 19, 1990 pursuant to the divorce wherein they agreed to a custody arrangement for the two minor children and set forth Father's child support obligation. Regarding child support, Father agreed to pay $4,000 per month for any month in which he was employed and being paid as a full-time player in the NFL. In any

month that Father was not so employed, the parties agreed that child support would be determined by applying the Pennsylvania Support Guidelines.

Between April 1990 and January 1994, Father made the agreed-upon support payments of $4,000 per month. At the end of January 1994, however, Father retired as an active player in the NFL. The parties subsequently instituted legal proceedings to determine the proper amount of support in the wake of Father's retirement. After a hearing and a hearing officer's recommendation, the trial court entered an order setting Father's support obligation at $2,000 per month for February 1994 through December 1994, and $835 per month starting in January of 1995. Both parties appealed from this order.

Initially, we note that our scope of review in support cases is narrowly defined. "This Court will not disturb a child support Order absent an abuse of discretion, which is not made lightly and rests upon a showing of clear and convincing evidence. This Court has held an abuse of discretion occurs if insufficient evidence exists to sustain an award or if the trial court overrides or misapplies existing law." *Kelly v. Kelly,* 430 Pa.Super. 31, 34, 633 A.2d 218, 219 (1993) (citations omitted).

On appeal, Father first argues that the trial court erred in setting his support obligation at $2,000 per month for the period between February and December 1994. Specifically, Father asserts that a sum of $200,000 earned in 1993 and deferred until 1994 should not have been included in the calculation of his 1994 support obligation. According to Father, the $200,000 was already accounted for, in that his 1993 support payments of $4,000 per month were based on the fact that he earned $400,000 per year, even though half of that income was deferred until the following year. Therefore, Father argues, "[t]o allow a support order for 1994 to include the $200,000 of the 1993 deferred income would allow Mother two bites of the apple and result in an unjust financial burden upon Father." Father's brief at 9.

The success of Father's argument hinges upon his ability to establish that the $200,000 was indeed taken into account in setting the $4,000 per month support payments in 1993. Unfortunately for Father, the parties agreement does not establish this crucial fact. Pursuant to paragraph 8 of the parties' agreement, Father agreed to pay child support as follows:

8. ... Beginning August 1, 1990, Husband's obligation for child support shall be calculated based upon the incomes of both parties using the child support guidelines then in effect for the Commonwealth of Pennsylvania, except that for any month in which Husband is employed and being paid as a full-time player in the National Football League, Husband's obligation for child support shall be $4000.00 per month.

Agreement, 4/19/90 at 5. According to the clear language of the agreement, the $4,000 per month payment is conditioned upon Father being employed and being paid as a full-time player in the NFL. The agreement does not condition the $4,000 per month obligation upon Father making $400,000 per year, as Father now asserts. Although Father attempts to explain that the parties' understanding was that the monthly payment was based upon his salary of $400,000 per year, we simply cannot accept such evidence when the language of an agreement is clear and unambiguous. *See Halpin v. LaSalle University*, 432 Pa.Super. 476, 480–82, 639 A.2d 37, 39 (1994), *appeal denied*, 542 Pa. 670, 668 A.2d 1133 (1995). Father's first claim must therefore fail.

Father also claims that the trial court erred in calculating the 1995 support obligation by "arbitrarily assessing Father with a $1,000.00 a month earning capacity." Father's Brief at 9. It is well-established that a parent's earning capacity may be considered in determining the proper support obligation. *See, e.g., Perlberger v. Perlberger*, 426 Pa.Super. 245, 282–83, 626 A.2d 1186, 1206, *appeal denied*, 536 Pa. 628, 637 A.2d 289 (1993). "A person's earning capacity is defined 'not as an amount which the person could theoretically earn, but as that amount which the person could realistically earn under the circumstances, considering his or her age, health, mental and physical condition and training.'" *Id.* (quoting

*Myers v. Myers,* 405 Pa.Super. 290, 297, 592 A.2d 339, 343 (1991)).

■ Instantly, the trial court's assignment of a $1,000 per month earning capacity to Father was amply supported by the record. At the support hearing, Father testified that he was physically and mentally capable of working, that he was currently working part time in sales, and that he was looking for full time employment. *See* Support Hearing Transcript, 4/27/95 at 47–49. Father also testified that he held a college degree in sociology, and that he could be qualified to coach football, although he would prefer to get away from the game for a few years. *Id.* at 50–51. In the immediate future, Father stated that he was seeking to purchase a restaurant/bar in the Pittsburgh area. *Id.* at 13. On the basis of this record, particularly the testimony indicating that Father was physically and mentally capable of working, the trial court was not unrealistic is assigning to Father a minimal earning capacity of $1,000 per month. *See Perlberger, supra.*

■ Mother also appealed from the trial court's order, and she raises two issues for our review. First, Mother argues that the trial court erred in excluding from the support calculations a severance payment, in the amount of $140,000, that Father received in 1995. As Mother correctly notes, "all the parents assets must be examined regardless of the source" in determining a proper child support award. *Butler v. Butler,* 339 Pa.Super. 312, 317, 488 A.2d 1141, 1143 (1985). Notwithstanding this general rule, however, the trial court concluded that the severance award was considered at the time of the parties' agreement and was meant to be excluded from the calculation of Father's income for purposes of support. Trial Court Opinion, 12/18/95 at 3. Mother does not challenge this determination. Since Mother's argument on appeal does not address the basis for the trial court's decision, let alone assert that the trial court erred in relying on the parties' agreement, her claim must fail.

■ Mother also asserts that the trial court erred in failing to award sufficient attorney's fees. While Mother was already

awarded $500 in attorney's fees, she asserts that she is entitled to an additional $7,500 because Father acted in bad faith. *See* Mother's brief at 9–10. We find no evidence to support this assertion. While Father's argument with respect to the $200,000 of deferred income ultimately failed, it was not a frivolous argument and it does not establish bad faith. Since we find no evidence to suggest that the trial court erred in awarding only $500 in attorney's fees, we reject Mother's final claim.

Order affirmed.