REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 1011

September Term, 2013

_____

JOHN LEINEWEBER

v.

MICHELE LEINEWEBER

_____

Zarnoch,
Wright,
Nazarian,

JJ.

_____

Opinion by Wright, J.

_____

Filed: October 29, 2014

Appellant/Cross-Appellee, John Leineweber ("Father"), and Appellee/Cross-Appellant, Michele Leineweber ("Mother"), were divorced in the Circuit Court for Howard County on April 4, 2005. The Judgment of Absolute Divorce granted the parties joint legal custody of their minor children with Mother having primary physical custody. Pursuant to a Mediated Settlement Agreement ("Agreement"), that was incorporated in the Judgment but not merged, Father agreed to "pay to [Mother] the sum of $2,199.00, per month, as and for child support."

On April 29, 2011, Mother filed a motion to modify custody and child support, which Father moved to dismiss. After hearing the matter on November 30, 2011, the Master in Chancery issued a written report and recommendation to which neither party filed exceptions. On January 3, 2012, the circuit court granted Mother's motion and ordered Father to pay Mother $13,263.00 per month in child support effective December 1, 2011, $14,336.54 for child support-related reimbursements, $110,156.00 for child support arrears, and $43,704.27 for counsel fees.

On October 31, 2012, Father filed a complaint to modify child support which Mother moved to strike. After hearing the matter on April 30, 2013, the Master recommended that the circuit court deny Father's request for modification. On May 9, 2013, Father filed exceptions arguing in pertinent part that "although the Master determined that [Father's] previous deferrals were counted as income in the year in which they were earned . . . and [Father] introduced sufficient evidence to identify the amounts which were previously deferred, the Master failed to take into consideration the evidence

presented in reaching her recommendation." On July 3, 2013, the court held a hearing on Father's exceptions and, thereafter, denied Father's request for modification of child support. On July 31, 2013, Father timely appealed. He asks us to determine whether the circuit court abused its discretion in denying his motion to modify child support.[1]

On May 16, 2013, prior to the exceptions hearing, Mother filed a motion for counsel fees and costs with request for a hearing, which the circuit court summarily denied on August 26, 2013. On September 4, 2013, Mother filed a motion for reconsideration, which the court also summarily denied on October 15, 2013. Thereafter, Mother noted a cross-appeal wherein she asks us to determine whether "the trial court err[ed] in failing to conduct an evidentiary hearing on [her] claim for an award of counsel and experts [sic] fees and court costs."

For the reasons that follow, we affirm the circuit court's judgments.

**Facts**

The parties were married on October 21, 1995, in Baltimore, Maryland, and had two children, Emory and Peyton. At all times of the proceedings in this case, Father worked as an employee of Jones Lang LaSalle, Inc. In 2004, the parties entered into an

---

[1] In his brief, Father worded his question as follows:

Where deferred income was included in the calculation of child support in the years in which it was earned, and payments were made on that calculation, when calculating a modification of that award, is it proper for the Court to include that same deferred income again in the years paid?

2

Agreement, which was incorporated but not merged into the Judgment of Absolute

Divorce.  The Agreement provided, in pertinent part:

**4.      CHILD SUPPORT**

A.      Commencing April 1, 2004 or the date on which this Agreement is signed, whichever later occurs, [Father] shall pay directly to [Mother], for the support and maintenance of the Children, the sum of Two Thousand One Hundred Ninety Nine Dollars ($2,199) per month, payable on the first day of each month . . . .

The parties have agreed to the amount of child support payments set forth above in consideration of each party's rights and benefits under this Agreement, and with due regard for the child support guidelines currently in effect in Maryland.  The parties have based this calculation on the following information: [Father's] gross annual income is $150,000; [Mother's] gross annual income is $75,000 . . . .

\*       \*       \*

D.      The parties agree that the child support shall be recalculated on April 15th 2006 and that they will recalculate the child support every two years thereafter.  The parties shall exchange his and her income tax forms with the other party on or before April 15th of the recalculation year, the child support shall be calculated in accordance with the then current gross incomes of the parties and the child support guidelines in effect at that time. The new child support figure shall be payable as of May 1st of the recalculation year.  In addition, if either party has an involuntary twenty five percent (25%) increase or decrease in gross income, the child support shall be recalculated as of the date of such involuntary increase or decrease and the new child support amount shall be due and payable as of the first day of the month immediately following the effective date of such increase or decrease[.]

In 2011, Mother filed a motion to modify custody and child support which the

circuit court granted.  In ordering the modification, the court adopted the Master's

recommendations, which were based on the following factual findings:

33.  At the time of the parties' meeting in April 2006, based on the

documentation produced by Father, the parties agreed that Father's total income for the year would be $144,000. This figure represented the $125,000 in wages, a projected $15,000 bonus, and some other miscellany. It was not an accurate expression of Father's gross income, and the [M]aster finds that Father was aware of this inaccuracy and that it was intended by Father to mislead Mother for the purpose of reducing his child support obligation.

\* \* \*

44. At no time did Father ever disclose to Mother that his income had dramatically increased from the time child support was originally set. The evidence presented by Father shows the following income: 2004: $150,000; 2005: $291,125; 2006[:] $402,791; 2007: $356,434; 2008: $392,796; 2009: $422,060; 2010: $626,570; and 2011 (as of October): $838,426.

45. Mother's income has also increased, but not as dramatically: 2004: $68,377; 2005: [$]73,189.61; 2006: $82,577; 2007: $87,567; 2008: $90,486; 2009: $94,134; 2010: $95,831.73; 2011: $108,929 (extrapolated from current numbers).

As a result, Father was ordered to pay Mother $13,263.00 per month in child support effective December 1, 2011, $14,336.54 for child support-related reimbursements, $110,156.00 for child support arrears, and $43,704.27 for counsel fees. He did not note an appeal.

On October 31, 2012, Father filed a complaint to modify child support, alleging that "there has been a material change in circumstances" in that his "income has substantially decreased." In support of his allegation, Father averred:

6. That, at or about the time in the Court's Order, the Court utilized the sum of Eight Hundred Thirty Eight Thousand Four Hundred Twenty Six Dollars and Two Cents ($838,426.02) as 2011 income for [Father].

7. That that figure consisted of, inter alia, a base salary of Two Hundred Five Thousand Dollars ($205,000.00), a bonus of Four Hundred Sixty Seven Thousand One Hundred Twenty Three Dollars ($467,123.00), and

4

[Share Option Plans] vesting of $162,573.20.

* * *

10. That since the aforesaid Hearing, [Father] has received his bonus for 2011 received in 2012 in the amount of One Hundred Thirty One Thousand Six Hundred Forty Three Dollars and Seventy Five Cents ($131,643.75), representing a substantial decrease . . . .

11. That, in addition, [Father] has available to him, through his employer, a deferred compensation plan that provides him with the opportunity to defer income on an annual basis . . . .

12. That, although documentation of current income will appear to be significantly higher than set forth herein, those figures that contribute to the W-2 and paystub numbers are in fact the result of compensation previously deferred.

13. That, although it may appear that those figures should be considered for purposes of determining current child support, the Court has already considered those deferred compensation figures . . . .

14. . . . . The income for Defendant is now Four Hundred Thousand Nine Hundred Thirty One Dollars and Sixty Cents ($400,931.60).

* * *

17. That, as of January 1, 2012, [Father's] income decreased by more than twenty five percent (25%) from his 2011 income figure utilized by the Court to calculate his 2011 child support obligation.

Thus, Father asked the court to "modify his child support retroactive to January 1, 2012."

After hearing the matter on April 30, 2013, the Master recommended that the circuit court deny Father's motion based, in relevant part, on the following factual findings, to which Father subsequently excepted:

37. The [M]aster did not agree with [the] analysis [of Mother's accounting expert, that the deferred monies should be treated as income both in the year it was deferred, and in the year it was paid]. In this particular case, the previous deferrals were counted as income in the year in which they were earned for child support. Only the growth on the deferrals can be attributed

5

as income to avoid the "double dipping." However, comparing the numbers from the [W-2s] and the amounts on the deferred compensation it is not possible to know how much is attributable to actual contribution to the deferred compensation plans and the amount of gain that money earned prior to distribution.

\* \* \*

48. The burden is clearly on [Father] to prove the material change in circumstances in order to merit a modification of child support. [Father] presented numerous documents and reports to demonstrate his income. Clearly his 2012 bonus income is lower than his 2011 bonus income. The dispute between the parties surrounds the treatment of [Father's] receipt in 2012 of the $396,164.24 deferred compensation for child support purposes. If it is not included in income, [Father] is entitled to a modification of child support. If it is included in income, or if a sufficient portion is included in income, [Father] would not be entitled to a modification. The problem is one of proof. The [M]aster finds that amounts actually deferred in prior child support years should not be included in income in determining child support in future years to the extent that the deferred monies are being paid out to [Father]. However, [Father] has failed to prove how much of that money was actually counted before as his income for the purposes of child support. Since the burden of production rested with [Father], his failure to bring proof from which this court can determine his 2012 income is a fatal flaw i[n] his case for modification, and it must fail.

In his exceptions, Father argued that he "produced sufficient evidence for the Master to accurately segregate the amounts deferred from [his] income from the gains and losses which those amounts earned prior to distribution." According to Father, the evidence that he presented "reflects that the sum of $396,164.24 is comprised of income which [he] previously deferred from (1) his 2005 bonus (paid in 2006), (2) his 2007 base salary, and (3) his 2007 bonus (paid in 2008)." Specifically, Father noted that evidence was presented to show that he "deferred one hundred percent (100%) of his 2005 bonus, twenty five percent (25%) of his 2007 base salary, and seventy five percent of his 2007

6

bonus." Therefore, he urged the circuit court not to include the sum of $396,164.24 in his 2012 income for the purposes of determining child support.

After holding a hearing on Father's exceptions on July 3, 2013, the circuit court ruled from the bench as follows:

> I find that that was an appropriate position for the Master to take [to include the $396,164.24 in calculating Father's income because there was no evidence to distinguish what portion of it was a gain on the original deferred income]. And, quite frankly, even perhaps more, I guess I should say that I agree with the Master beyond that because I think it results in the same conclusion that that $396,164.24 was income for 2012. And whether it was or was not properly included as income when it was deferred is not entirely clear from the record. But, if it was inappropriately included at the time it was originally calculated as income when it was, in fact, deferred is sort of ancient history. My position would be that it was, in fact, income for the year 2012, which was the important time frame for purposes of these calculations.
>
> And so, I agree with the Master, perhaps, for a slightly different reason. I feel like the inclusion of the deferred income at the - - in the past may have been a mistake. That the parties did not take exception to or appeal from . . . that's *res judicata*. That's water under the bridge. But, for purposes of 2012, what is appropriately income, I find that that [$396,164.24] was appropriately considered in those calculations because it was, in fact, income for 2012.
>
>           \*   \*   \*
>
> . . . So, with that the [Father] does not meet his burden of demonstrating a 25% reduction. I'm sorry if that does result in double dipping. As a practical matter maybe it did, but the calculations for 2012, as far as I'm concerned, are correct.

Additional facts will be included as they become relevant to our discussion, below.

7

**Discussion**

**I.      Child Support**

Father argues that the circuit court erred in denying his request for modification of child support because he met his burden of proving that he suffered a decrease in income of at least 25 percent.[2]  Specifically, Father contends that "deferred income, which was attributed to a parent in the years it was earned for purposes of calculating child support . . . should not be counted a second time," as the court "recognized," that it did here. Father further asserts that he met his burden by establishing that the entire $396,164.24 in deferred income "had been included in the prior award."

In response, Mother argues that the circuit court's judgment should be affirmed because Father failed "to meet his burden of proof that he incurred a 25% decrease in his income to warrant a modification of his child support obligation."  Mother notes that the Master only recalculated child support based on Father's income in 2005, 2006, 2010, and 2011, but that deferred monies were also deposited in *2007* and *2008*, and Father failed "to show what portion of those deferred funds were actually used . . . during th[e] recalculation years."  Mother also urges us to uphold the circuit court's conclusion that deferred income "should be calculated when it is first received, whether deferred or not, and income again in the year it is actually received."

---

[2] To be clear, Father does not challenge the circuit court's January 3, 2012 order, which directed him to pay Mother child support reimbursements, arrears, and counsel fees, in addition to modifying child support.

8

We agree with Father that deferred income, which has been attributed to a parent in the years it was earned for purposes of calculating child support, should not be counted a second time when that parent actually receives it. Nonetheless, we uphold the circuit court's denial of Father's motion for modification because our review of the record reveals that Father failed to show that the $396,164.24 in deferred income had been included in the circuit court's *prior* calculations of child support. As such, Father failed to meet his burden of proving that he has suffered at least a 25 percent decrease in income.

Pursuant to Md. Code (1984, 2012 Repl. Vol.), § 12-104(a) of the Family Law Article ("FL"), a court "may modify a child support award subsequent to the filing of a motion for modification and upon a showing of a material change of circumstance." *See also Ley v. Forman*, 144 Md. App. 658, 665 (2002) ("When presented with a motion to modify child support, a trial court may modify a party's child support obligation if a material change in circumstances has occurred which justifies a modification."). "[A] material change in circumstances may be based . . . on a change in . . . the parents' ability to provide support." *Smith v. Freeman*, 149 Md. App. 1, 20-21 (2002) (citations and emphasis omitted).

In cases such as this, where a Master submits a proposed order to the circuit court, exceptions to the recommendation "warrant an independent consideration by the trial court." *Kierein v. Kierein*, 115 Md. App. 448, 453 (1997). "The trial court 'should defer

9

to the fact-finding of the master where the fact-finding is supported by credible evidence, and is not, therefore, clearly erroneous.'" *Id.* (quoting *Wenger v. Wenger*, 42 Md. App. 596, 602 (1979)). "[W]hen faced with exceptions to the master's findings of fact, the trial court must exercise its independent judgment, consider the allegations, and decide each such question." *Id.* at 454 (citation and footnote omitted). Further, "[t]he judge should, in an oral or written opinion, state how he resolved those challenges." *Id.* (citation omitted). Ultimately, "[w]hether to grant a modification rests with the sound discretion of the trial court and will not be disturbed unless that discretion was arbitrarily used or the judgment was clearly wrong." *Ley*, 144 Md. App. at 665 (citing *Dunlap v. Fiorenza*, 128 Md. App. 357, 363 (1999)).

In this case, both parties agree that there is presently no Maryland authority that addresses the issue of whether deferred income, which was attributed to a parent in the years that it was earned for purposes of calculating child support, can be counted again as "income" in the year actually received when recalculating child support. FL § 12-201(h) defines "[i]ncome" as "actual income of a parent, if the parent is employed to full capacity[.]" In turn, "'[a]ctual income' means income from any source." FL § 12-201(b)(1). Meanwhile, "'[a]djusted actual income' means actual income minus . . . preexisting reasonable child support obligations actually paid." FL § 12-201(c)(1).

As Father notes in his brief, the Supreme Court of Alaska was faced with a similar issue in *Bergstrom v. Lindback*, 779 P.2d 1235, 1237 (Alaska 1989), where the Court

10

addressed Alaska's Civil Rule 90.3(a)(1), which "defines income as the parent's 'total income from all sources.'" The *Bergstrom* Court reasoned:

> Given this broad definition, we believe that the superior court has discretion whether to include in income amounts voluntarily deposited into deferred income compensation accounts. *Under this rule, the court will be able to prevent a parent from decreasing his or her child support obligation by shifting income earned presently into the future.*

*Id.* at 1237 (internal citation omitted) (emphasis added).[3] *See also Murray v. Murray*, 716 N.E.2d 288, 293 (Ohio Ct. App. 1999) (noting that "the income should be imputed . . . to prevent a parent from avoiding child support obligations by shifting present income to a cash flow expected to be enjoyed at some future time, when the children have become emancipated[,]" and that "[a] choice to defer income will not justify deferring or avoiding child support") (citations omitted); *Jones v. Jones*, 883 So. 2d 207, 211 (Ala. Civ. App. 2003) ("allowing a parent to exclude deferred income from calculations of child support income on which taxes have been deferred could frustrate the legitimate purpose of the support orders; it would permit a parent charged with a duty of support to lower the

---

[3] In *Bergstrom*, the Court went on to conclude:

> [O]nce the court decides to include deferred compensation in the child support calculus, logic dictates that the court also reduce the resulting annual income by the income taxes which would have been paid had the deferred compensation been included in that year's income for tax purposes. This corollary prevents an obligor parent who defers present income from being saddled with a child support obligation greater than that which would have resulted had the parent not deferred income at all.

*Bergstrom*, 779 P.2d at 1237.

11

amount that would be subject to a support order.") (Quoting *Ennis v. Venable*, 689 So. 2d 165, 166 (Ala. Civ. App. 1996)).

Applying the same reasoning here, if we adopt the circuit court's belief that deferred income should be included only when the non-custodial parent actually receives the money, then that parent would be able to decrease his or her child support obligation by shifting income earned presently into the future. Therefore, we agree with Father's assertion that deferred income should be included in the child support calculation only during the year that it was earned and not during the year that it is actually received.

Having determined the applicable law, we turn to look at whether the circuit court abused its discretion in concluding that Father failed to meet his burden of demonstrating a 25 percent reduction in income. Specifically, we look to see whether Father proved that his deferred income of $396,164.24 was included in the previous child support calculations, thus warranting its removal from Father's present income. *Compare Grams v. Grams*, 624 N.W.2d 42 (Neb. Ct. App.) (2001) (concluding that inclusion of deferred income for purposes of calculating child support was inappropriate where the trial court used taxable income from prior years to calculate support) *with Hinkle v. Hinkle*, 685 A.2d 175 (Pa. Super. Ct.) (1996) (indicating that deferred income received by obligor in year of modification could be considered when modifying child support obligation, absent showing that the deferred income was considered when setting the amount of prior support payments).

When Father filed his exceptions to the Master's recommendations, he attached as an exhibit a "Benefit Statement for the Period December 1, 2011 - March 31, 2013," detailing his "Deferred Compensation Plan." Under the heading "Account Balance by Plan Year & Deferral Source," the document indicates that $396,164.24 was distributed to Father from his 2005 and 2007 Plan Year deferrals. The document also states that Father had $401,491.90 in "Deferrals to Date," which it defined as "the total contributions by deferral source for each Plan year from inception to the end of the statement period." Therefore, based on this exhibit, Father provided proof that he had deferred at least $401,491.90, from which he cashed out the $396,164.24 that is presently at issue.

What Father failed to prove, however, is that the circuit court, in recalculating his child support and arrears in January 2012, included the $396,164.24 in its calculations. When Father filed his motion to modify child support, the only documents he attached were: (1) the parties' Agreement; (2) their W-2s from 2005 to 2010; (3) documents detailing their insurance and childcare expenses; (4) a list of their annual and monthly incomes from 2004 to 2011; and (5) the Master's child support worksheets which were used in recalculating child support. None of these documents address the specific issue of whether Father's annual income included the deferrals for all the years in question. Accordingly, we cannot, nor could the circuit court, discern what portion of Father's "annual income" could be attributed to his deferred income. Because Father failed to

13

provide evidence that the $396,164.24 in deferred income was actually used by the Master in her 2012 calculations, we cannot give him the benefit of reducing his present income by that amount.

As Father failed to meet his burden of proof, we affirm the circuit court's denial of his motion to modify child support. *See Robeson v. State*, 285 Md. 498, 502 (1979) ("a trial court's decision may be correct although for a different reason than relied on by that court.") (Citations omitted). We and the circuit court get to the same result by a slightly different pathway.

## II. Attorney's Fees

Mother, in her cross-appeal, argues that the circuit court erred in denying her motion for counsel fees and costs without a hearing because "a trial court must conduct an evidentiary hearing on the issue of an appropriately filed request for counsel fees and court costs." Citing FL § 12-103(b) and *Davis v. Petito*, 425 Md. 191, 206 (2012), Mother urges us to remand the case back to the circuit court for an evidentiary hearing on her motion.

FL § 12-103, in its entirety, states:

**Award of costs and fees**

(a) The court may award to either party the costs and counsel fees that are just and proper under all the circumstances in any case in which a person:

      (1)     applies for a decree or modification of a decree concerning the custody, support, or visitation of a child of the parties; or

(2)    files any form of proceeding:

(2)    files any form of proceeding:

      (i) to recover arrearages of child support;

      (ii) to enforce a decree of child support; or

      (iii) to enforce a decree of custody or visitation.

**Conditions for award of costs and fees**

(b) Before a court may award costs and counsel fees under this section, the court shall consider:

    (1)    the financial status of each party;

    (2)    the needs of each party; and

    (3)    whether there was substantial justification for bringing, maintaining, or defending the proceeding.

**Whom cost and fees awarded to**

(c) Upon a finding by the court that there was an absence of substantial justification of a party for prosecuting or defending the proceeding, and absent a finding by the court of good cause to the contrary, the court shall award to the other party costs and counsel fees.

A plain reading of this statute shows that the court is required to consider the three factors under FL §12-103(b) "[b]efore [it] *award[s]* costs and counsel fees," not before denying a party's request for costs and fees. (Emphasis added). *See In re Sean M.*, 430 Md. 695, 703 (2013) (stating that in interpreting statutes, appellate courts first "look[s] to the normal, plain meaning of the language of the statute") (citation and internal quotation mark omitted). Nonetheless, this Court has previously remanded a case "for the trial court to consider the factors in FL § 12-103 and articulate its basis for denying counsel

15

fees" where the parties had "disparate incomes." *Kierein*, 115 Md. App. at 459. This is because "[t]he standard of review for the award of counsel fees and costs in a domestic case is that of whether the trial judge abused his discretion in making or denying the award." *Steinhoff v. Sommerfelt*, 144 Md. App. 463, 487 (2002) (citations omitted). Stated differently, "[a]n award of attorney's fees will not be reversed unless a court's discretion was exercised arbitrarily or the judgment was clearly wrong." *Petrini v. Petrini*, 336 Md. 453, 468 (1994) (citations omitted).

In this case, however, we need not address Mother's contention that the circuit court abused its discretion in not hearing the matter because, as Father notes in his reply brief, Mother "made no request of the [c]ourt to take evidence on or hear argument on her Motion" during the exceptions hearing on July 3, 2013. Mother filed her motion for attorney's fees 18 days before the hearing, yet she did not raise the issue when the parties came before the court. As such, she waived her claim. *See Davis v. Davis*, 335 Md. 699, 722 (1994) (stating that "failure to raise the issue . . . constitutes a waiver of that allegation of error").

For all of the foregoing reasons, we affirm the judgments of the circuit court.

> **JUDGMENTS OF THE CIRCUIT COURT FOR HOWARD COUNTY AFFIRMED. COSTS TO BE DIVIDED EQUALLY BETWEEN THE PARTIES.**

16