J-A24024-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| F.E.S. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| A.L.S., III | : | |
| | : | |
| Appellant | : | No. 606 MDA 2018 |

Appeal from the Order Entered March 20, 2018
In the Court of Common Pleas of Franklin County Domestic Relations at
No(s):  DRS 2015-363,
PACSES 275115394

BEFORE:  OTT, J., McLAUGHLIN, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY McLAUGHLIN, J.:               **FILED JANUARY 23, 2019**

A.L.S., III ("Husband") appeals from the order of March 20, 2018, finding him in contempt for failure to pay spousal and child support. We vacate and remand for proceedings consistent with this opinion.

Wife and Husband were married in 1986 and separated in 2016, at which time they had one dependent child, M.S. ("Child"). Wife filed a complaint for spousal and child support on August 9, 2016. After a conference before a domestic relations officer, an initial support order, and a *de novo* hearing before a support master, the trial court entered a support order on February 23, 2017. Although Husband had argued he was disabled, he had not provided the Master with documentation from a healthcare provider evincing his inability to work. Wife had no income, as she home-schooled child. The court therefore accepted the Master's determination that Husband had willfully

reduced his income and had assigned him an earning capacity, and accordingly ordered him pay $406.36 in monthly spousal support, $429 in monthly child support, and $85.34 in monthly arrears on an outstanding balance of $5,528.82. Husband filed exceptions to the support order and a motion to suspend support, which were denied by the court on August 24, 2017. Husband appealed the order denying the motion and exceptions; that appeal remains pending in this Court. *See F.E.S. v. A.L.S. III*, No. 1483 MDA 2017.

In the meantime, the Domestic Relations Section of Franklin County ("DRS") filed a petition for contempt based on Husband's failure to pay the ordered support. The docket indicates that a hearing occurred on March 16, 2017, although no transcript appears in the certified record. *See* N.T. 2/8/18, at 14. The court found Husband in contempt and ordered him to serve 15 days in jail unless he paid $500 towards his arrears balance by March 31, 2017, and to complete a functional capacity evaluation in April 2017. Husband apparently paid the purge amount and submitted to the evaluation. *Id.* at 11.

DRS filed additional, repeated contempt petitions for Husband's failure to pay support beginning in April 2017. In May, Husband filed a motion to terminate support for Child, who had reached 18 years of age and who was due to complete high school in June. The court scheduled hearings on both the contempt petitions and termination motion, but repeatedly rescheduled them for future dates.

In September, Husband filed a motion to modify the support order, on the basis that Husband had been deemed totally disabled by a physician in

April, and raising again that Child was emancipated as of June. The court ordered that the motion to modify would be heard on October 5, 2017, the same date as the termination motion and contempt petitions.

Husband then filed an application for supersedeas of the support order pursuant to Pa.R.A.P. 1731(b).[1] In the application, Husband alleged that the court had "stayed" the October 5 hearing on Husband's motion to terminate/reconsider support because there was a pending appeal of the support order. But, Husband complained, the court did not also stay the October 5 contempt hearing. Husband sought supersedeas because he allegedly could not afford to pay support, was facing contempt for failure to pay support, and was precluded by the court from seeking modification of the support order.

The docket is unclear as to whether the court had, in fact, canceled the October 5 hearing on Husband's motions to modify and terminate. However, on October 4, the court issued a rule to show cause directing Wife to respond to Husband's application for supersedeas. The order also mandated that "any collections or enforcement of the support order in this case is STAYED pending further Order by this Court."[2] Wife responded, arguing against supersedeas.

_____

[1] "An appeal from an order of child support [or] spousal support . . . shall operate as a supersedeas only upon application to and order of the trial court and the filing of security . . . ." Pa.R.A.P. 1731(b).

[2] Although a support order may only be stayed following notice, a hearing, and a showing of compelling circumstances, Pa.R.C.P. No. 1910.26, none of which occurred here, the court's order staying support is not before us on appeal.

- 3 -

On October 19, 2017, the court scheduled a hearing on the matter, which it later rescheduled for February 8, 2018.

In January 2018, Husband withdrew his application for supersedeas. Shortly thereafter, the DRS filed a new petition for contempt. By this time, DRS claimed that Husband owed $12,002.96 in arrears. The court scheduled a hearing on the contempt petition for February 15, 2018. Prior to the hearing, Husband filed an answer and new matter, seeking the dismissal of the contempt proceedings on the basis that he provided proof of his disability and has no income.

At the hearing on February 15, Husband asserted that he had a physician's statement dated April 28, 2017, which verified his total disability. N.T., 2/15/18, at 2-3. Husband also claimed that the Social Security Administration had found him to be disabled (after he appealed its initial ruling), and was going to retroactively compensate him for two years of disability income. *Id.* Husband asserted that it would be unfair to find him in contempt because of the evidence that he was and is unable to pay. *Id.* at 15-16.

Wife argued that the support order could not be amended either for Husband's disability or the Child's emancipation because Husband had appealed. *Id.* at 6, 11-12, 17. Husband agreed that the court could only enforce, and not amend, the February 2017 order, and suggested that if the court did find him in contempt, that the court craft an order directing him to make future payments contingent upon his receipt of Social Security disability

income. *Id.* at 15-16. Wife responded that regardless of Husband's disability status, Husband had always had access to assets from which he could have satisfied the court's order. She pointed out that the parties own numerous parcels of real estate but Husband had failed to execute documents authorizing their sale. *Id.* at 10.

Wife asked Husband whether he had yet received the lump sum retroactive payment from Social Security. *Id.* at 7-8. Husband responded that he had not received it, and did not know when he would receive it, but that he had begun to receive monthly Social Security payments in the preceding months. *Id.* at 8-9, 20-21. Wife stated that she had already received her portion of the lump sum payment directly from Social Security. *Id.*

The court found Husband in contempt, and ordered him to pay $4,650 by March 2, 2018, to avoid 30 days in jail; to "make regular payments;" and to list at least one piece of real property by March 15, 2018. *Id.* at 19.[3] After the hearing concluded, Wife informed Husband that Child had already received his portion of the lump sum payment as well. *See* N.T., 3/1/18, at 6.

One week later, on February 22, 2018, DRS filed another petition for contempt. It stated, "[Husband] listed for court on 03/01/18 due to false information provided in court regarding Social Security lump sum payment." Pet. for Contempt, 2/22/18, at 1. It also stated that as of February 22, the

_____

[3] The court issued a written order the next day memorializing the finding of contempt.

arrearages were $12,820.40. The court scheduled a hearing on the petition for March 1, 2018.

At the commencement of the March 1 contempt hearing, the attorney for DRS acknowledged that Husband had already paid the $4,650 purge amount which was due the next day. N.T., 3/1/18, at 5. DRS clarified that the reason for the contempt hearing was that Husband had falsely represented at the February 15 hearing that he had not yet received the Social Security lump sum payment, which was over $24,000. *Id.* at 4. DRS argued that the day after the February 15 hearing, one of its officers contacted the Social Security office, and learned that the lump sum had already been transferred to Husband. *Id.* at 5.

Husband responded that prior to the February 15 hearing, Social Security had sent him a debit card from which he could withdraw funds, but that when he had first tried it, the lump sum had not yet been deposited into his account. *Id.* at 7. According to Husband, because Wife testified at the February 15 hearing that she had received money from Social Security, Husband tried his card again that same evening, and learned that the lump sum had been deposited into his account. *Id.* at 9, 13. Husband said that, then, two days after the February 15 hearing, he received a letter from the Social Security Administration, mailed on February 17, stating that he would not receive the lump sum payment until February 23. *Id.* at 9-10. Ultimately, Husband contended that he had not been intentionally dishonest at the February 15 hearing when he stated that he had not yet received the lump

sum payment from Social Security and was unsure of when he would receive it. *Id.* at 10.

DRS called one of its officers to testify regarding the date Husband had received the lump sum. *Id.* at 14-16. The officer submitted an e-mail sent by Social Security on February 17 confirming that the lump sum had been transferred to Husband "this month." *Id.* at 20-21. Husband objected to hearsay when the officer attempted to relate what she had been told by a Social Security administrator over the telephone. *Id.* at 18. The court continued the hearing so that the DRS could obtain the direct testimony of a Social Security representative. *Id.* at 23-24. The second portion of the hearing was scheduled for March 15.

On March 15, the attorney for DRS stated that she had subpoenaed a Social Security officer to testify, but that Social Security had responded that its testimony was prohibited by federal law unless Husband consented to the release of his records. N.T., 3/15/18, at 2-3. DRS then pointed out that it was the due date for Husband to comply with the contempt order by listing a piece of property for sale, which was "another issue for the Court to resolve today." *Id.* at 4. Husband did not object. The discussion then turned to Husband's compliance with the February 15 contempt order.

Wife's attorney argued that while Husband had paid the purge amount by March 2, he had not listed a real estate property for sale or make his regular March support payment. *Id.* at 4-5. Husband responded by presenting a listing agreement for the property for sale. *Id.* at 5. Husband stated that he had

"saved" the document to present in person at the hearing "because there's been a problem in the past with [Wife's attorney] saying she doesn't get stuff." **Id.** at 5.

The parties then discussed whether Husband was making regular support payments. Husband contended that DRS was attaching $583 from his monthly Social Security income to go towards the support order, and requested that the court take into consideration that he was paying support through the attachment and had believed that the attachment was in lieu of and satisfied his monthly support obligation. **Id.** at 6-7, 9. Husband also stated that as Child received a lump sum directly from Social Security, the amount should be credited towards Husband's outstanding arrears balance. **Id.** at 9-10. In addition, Husband argued that Child was now 20 years old and should no longer receive support. **Id.** at 6.

DRS argued that the attachment was less than the monthly amount Husband had been ordered to pay in support under the February 23, 2017 order, and both DRS and Wife argued that Husband was able to pay the full monthly amount of support because he had received the lump sum and because of the property the parties owned. **Id.** at 7-8. DRS also argued that Husband could not be given credit towards the arrears owed based on the portion of the lump sum that Wife and Child received, because it constituted a change in circumstance which was unreviewable given the appeal of the support order. **Id.** at 11. And, considering that attachment of Husband's monthly Social Security payment would not begin until April, DRS contended

that Husband still owed the full amount of the regular March payment, $921. *Id.* at 13.

Wife requested $2,000 in counsel fees for Husband's obstreperous conduct. *Id.* at 13. Wife explained that Husband was to blame "for having to come down here three different times when these things could have all been taken care of. I think at this point, he is laughing at us, the Court, the system, the employees. Puts it all out on Facebook this is all a joke to him." *Id.* at 13-14. Wife argued that Husband had not made his regular payments in October, November, December, January, or February. *Id.* at 16-17.

The court found Husband in contempt. *Id.* at 17-18. The court ordered him to serve 60 days in jail unless he paid an additional $4,500 to DRS and $2,000 in counsel fees to Wife's attorney by March 23, 2018. *Id.* at 20. The court also ordered Husband to make regular support payments by supplementing the Social Security attachment in order to provide the full support amount listed in the February 23, 2017 support order. *Id.* at 20. Finally, the court ordered Husband to sign the document allowing Social Security to release the information regarding his benefits. *Id.* at 21.

Husband objected to the award of counsel fees, arguing that Wife had not filed a written motion giving Husband notice that she would be requesting counsel fees, but the court overruled the objection. *Id.* at 19. The court thereafter on March 20, 2018, entered a written order memorializing the finding of contempt and the imposition of sanctions.

Husband appealed, and raises the following:

1. Did the trial court abuse its discretion and commit an error of law and violate [Husband's] right of due process by finding [Husband] in contempt and awarding counsel fees without holding an evidentiary hearing[?]

2. Did the trial court abuse its discretion and commit errors of law by awarding counsel fees without a factual basis to support the award[?]

3. Did the trial court abuse its discretion and commit an error of law by ordering payment of $4[,]500 on arrears without first determining if that amount of arrears existed[?]

4. Did the trial court abuse its discretion by ordering full continued support payments of $921.06 to Wife and Child despite the known emancipation of Child and other compelling reasons[?]

Husband's Br. at 3-4 (answers below omitted).[4]

## I. The Finding of Contempt

Husband first argues that the court should not have found him in contempt at the March 15, 2018 hearing because he had no notice of the specific allegations of contempt and was not provided an opportunity to be heard on those issues. According to Husband, the March 15 hearing was a continuation of the March 1 hearing, which was scheduled due to DRS's petition for contempt on the basis that Husband had made false statements at the February 15 hearing. But, says Husband, the court made no finding of contempt on the basis of false statements, and instead found Husband in contempt for failure to comply with the February 15 contempt order. Husband claims he was without notice that DRS would pursue contempt on that basis at the hearing, was not prepared to present evidence on that issue, and was

---

[4] Husband's counsel filed a Petition to Withdraw in the trial court but has not filed such a petition in this Court.

- 10 -

precluded by the court from offering testimony to rebut DRS's allegations that he was in willful noncompliance of the February 15 order. Husband asserts this violated his due process rights.

Husband also argues that the court erred in finding him in contempt for violating the February 15 order because he had not willfully disobeyed the order. Husband was compliant with the court's order to pay $4,650 by March 2 and to list a property for sale by March 15, and believed that the March regular support obligation was satisfied by the attachment of his Social Security disability income.

A court may find a party in contempt if he or she "willfully fails to comply" with a support order. 23 Pa.C.S.A. § 4345(a). We review a finding of contempt for an abuse of discretion. *Godfrey v. Godfrey*, 894 A.2d 776, 780 (Pa.Super. 2006). "The court abuses its discretion if it misapplies the law or exercises its discretion in a manner lacking reason." *Id.*

We are unpersuaded that the hearing violated Husband's due process rights. Although the petition which set the March 15 hearing in motion was premised on Husband's alleged false statements, the petition also specified that Husband owed over $12,000 in arrears on the standing support order. Moreover, Husband arrived at the March 15 hearing with the intention of submitting evidence that he had listed a property for sale in compliance with the February 15 order. Clearly, Husband was aware that the issue of his compliance with the February 15 order would be addressed. Finally, Husband made no objection during the March 15 hearing that it was improper for the

court to hear argument regarding his compliance with support payments, or that the court was preventing him from offering any testimony, thus waiving his claim. Given these circumstances, we conclude that the court did not abuse its discretion by examining Husband's compliance with the February 15 contempt order on March 15, even if it was not the original reason the hearing was scheduled.

The second portion of Husband's argument prompts us to review the reasons the court found Husband in contempt. According to the Trial Court's Pa.R.C.P. 1925(a) Opinion, "the [c]ourt found [Husband] in [c]ontempt for failing to properly list a property for sale as required by the February 15, 2018 Order of Court and for failing to make regular payments as [o]rdered by the February 15, 2018 Order of Court and the controlling Support Order." Trial Court Opinion, filed May 18, 2018, at 7. The court later states that it awarded attorneys fees due to Husband's "repeated failure to make regular payment, his repeated failure to list a property for sale, his misleading comments to the Court on February 15, 2018, and [the] clear showing that he would comply unless forced to appear in Court . . . ." *Id.* at 9. The court then stated that Husband failed to comply with the court's orders when he did not pay the purge amount, due on March 2, until March 1; when he failed to list the agreement prior to March 15; and when he failed to sign a Social Security release form prior to the March 15 hearing. *Id.* According to the court, "the March hearings were completely avoidable but for [Husband]'s obstinate

- 12 -

conduct and lack of good faith reasons for failing to comply with the Order of Court." *Id.*

We conclude that the court abused its discretion in finding Husband in contempt on these bases. First, Husband was ordered to pay a purge amount by March 2 and list a property for sale by March 15, and he did so. Although the court expressed frustration that Husband did not pay the purge amount **prior** to March 1, when he paid it, or list the property **prior** to March 15, husband complied with the deadlines set by the court. Moreover, the March 1 and March 15 hearings were not scheduled in order to review Husband's compliance with the February 15 order, but on DRS's petition for contempt based on Husband's purported false statements. Therefore, the fact that Husband waited until the deadlines to comply with the February 15 order did not create the additional judicial proceedings.

While the court opined that Husband made misleading comments at the February 15 hearing, it made no clear finding on this point at the March 15 hearing. Rather, this topic appears to have remained unresolved because Husband had not signed the form consenting to the release of his Social Security information, and therefore the date upon which Husband received his lump sum, and realized he received it, was still unknown when the March 15 hearing concluded. In addition, the court did not order Husband to sign the Social Security release form prior to the March 15 hearing, and therefore could not have found him in contempt on March 15 on that basis.

Finally, we address the court's finding that Husband failed to "make regular payments" pursuant to the February 15 contempt order and the initial support order. It is unclear exactly which payments the court found Husband in contempt for failing to make. At the March 15 hearing, Wife suggested that the court find Husband in contempt for failing to make regular payments in October, November, and December 2017, and January and February 2018. However, the February 15 contempt order was the result of a hearing on that date, at which the court contemplated Husband's repeated failure to pay his monthly obligation up until that time. The court therefore could not hold Husband in contempt anew on March 15 for failure to pay in the months preceding the February 15 order and which were presumably addressed by that order. Moreover, the court's order of October 4, 2017, had suspended the collection of support until "further [o]rder by th[e c]ourt"; Husband's failure to pay support between October 2017 and February 2018 was therefore arguably at the behest of the court. To the extent the court found Husband in contempt on March 15, again, for failure to pay support preceding the February 15 hearing, it abused its discretion.

Husband did fail to make the regular March payment prior to the March 15 hearing. However, the trial court specified in its opinion that it had **not** found Husband in contempt based on a failure to pay the regular March payment. *Id.* at 7. Having found that the stated bases for finding Husband in contempt lacked reason, we conclude that the court abused its discretion in finding Husband in contempt, and vacate the order so finding.

- 14 -

Although we vacate on the grounds that the court abused its discretion in finding Husband in contempt, we address Husband's other issues, as they are apt to be repeated in the court below.[5]

## II. The Existing Support Order

In Husband's third and fourth issues, he argues that the court abused its discretion in ordering him to continue paying support under the February 23, 2017 support order because (1) the court failed to credit his arrears balance with the portion of retroactive Social Security disability income that Wife and Child had received and (2) Husband was not required to pay support for emancipated Child. Husband argues that the receipt of Social Security disability income and Child's emancipation gave the trial court jurisdiction to modify the support order despite the appeal.

Although Husband had filed both a motion to terminate support and a motion to modify support in May and September 2017, respectively, the court never held a hearing or ruled on these motions. According to Husband's application for supersedeas and the transcripts of the contempt hearings, the court refused to consider the changed circumstances because it was under the impression that it lacked jurisdiction to amend the support order of February 23, 2017, which was pending on appeal.

Under Rule 1701 of the Pennsylvania Rules of Appellate Procedure, when an order has been appealed, the trial court loses jurisdiction to "proceed

---

[5] We decline to address Husband's issue related to the attorney's fees ordered in conjunction with the contempt finding.

- 15 -

further in the matter." Pa.R.A.P. 1701(a). However, the Rule lists certain exceptions, such as the authority of the trial court to enforce the order under appeal or take action "ancillary to the appeal." Pa.R.A.P. 1701(b). The rule clarifies that "[w]here only a particular item, claim or assessment adjudged in the matter is involved in an appeal, . . . the appeal or petition for review proceeding shall operate to prevent the trial court or other government unit from proceeding further with only such item, claim or assessment . . . ." Pa.R.A.P. 1701(c).

A trial court may terminate or modify a support order based on a change in circumstances even where an appeal is pending. *See Fortune/Forsythe v. Fortune*, 508 A.2d 1205 (Pa.Super. 1986); *Commonwealth ex rel. Brown v. Brown*, 386 A.2d 15, 17 (Pa.Super. 1978); *see also* 23 Pa.C.S.A. § 4352 (court at all times maintains jurisdiction to enforce or modify support order). Modification is warranted where there has been a "substantial" change in circumstances. 23 Pa.C.S.A. § 4352(a); Pa.R.C.P. 1910.19(a), (c); *Plunkard v. McConnell*, 962 A.2d 1227, 1229 (Pa.Super. 2008). Upon a finding of a substantial change in circumstances, a court may modify support retroactive to the date of the filing of the petition. *See* Pa.R.C.P. 1910.17(a). However, a court may not modify any arrearages that accrued prior to that date, absent a "compelling reason" to do so. 23 Pa.C.S.A. § 4352(e).

To enable the court's timely consideration of substantial changes, parties are obligated to report any material changes in circumstances to the court within seven days. 23 Pa.C.S.A. § 4353(a); Pa.R.C.P. 1910.17(b). A

- 16 -

court has the authority to modify or terminate support in any appropriate manner based on the evidence before it. Pa.R.C.P. 1910.19(c). A petition for modification of support may not be withdrawn without leave of court. Pa.R.C.P. 1910.19(b).

Changes in income and assets may qualify as substantial changes in circumstances warranting modification. Pa.R.C.P. 1910.19(a). The receipt of Social Security disability payments is counted as income for support purposes, and affects the overall income of the parties for purposes of calculating child support. Pa.R.C.P. 1910.16-2(a)(6). Deferred income can be counted as income where it was not contemplated by the support order covering the time period in which the income was earned. *Hinkle v. Hinkle*, 685 A.2d 175, 177 (Pa.Super. 1996). A compelling reason to include Social Security disability income in the calculation of arrears, retroactive to the date that Social Security payments actually began, might exist where the party seeking modification filed a petition promptly upon the discovery of such payments. *Maddas v. Dehaas*, 816 A.2d 234, 241 (Pa.Super. 2003).

A parent is not obligated to support an emancipated child, and thus the Rules provide the court with the authority to automatically terminate support upon a child's emancipation. 23 Pa.C.S.A. § 4321(2); Pa.R.C.P. 1910.19(e); *see also McKinney v. Carolus*, 634 A.2d 1144, 1147 (Pa.Super 1993) (finding child support arrearages should not have accrued after child's emancipation).

Here, although the court did order that Husband's future payments be reduced by the amount attached from his Social Security payment each month, the court refused to amend the support obligation based on Husband's change in income. **See** Pa.R.C.P. 1910.16-2(a)(6) (Social Security disability payments are to be included in an income calculation). We do not imply that the court was beholden to the Social Security finding of total disability, and obligated to conclude that Husband had no earning capacity. **See Ewing v. Ewing**, 843 A.2d 1282, 1286 (Pa.Super. 2004). However, the court was at the very least obligated to reconsider Husband's income after his receipt of Social Security.

Second, the court refused to give Husband credit for the lump sum received by Wife and Child. The accrual and reduction of arrears are not necessarily modifications of a support order, so much as a part of the process of enforcing that order. **See** 23 Pa.C.S.A. § 4352(d) (overdue support is automatically added to the arrears balance, and the obligation terminates when paid); **Children & Youth Servs. of Allegheny Cty. v. Chorgo**, 491 A.2d 1374, 1376 (Pa.Super. 1985) (treating the application of credit for directly paid support as enforcement issue). Here, however, Husband should not only have been given credit for the lump sum, his receipt of any Social Security disability income should have triggered a reassessment of his income and resulting support obligations. The issue of how much credit Husband should have received for the lump sum was therefore also a modification issue.

Finally, the court refused to amend support based on Child's emancipation. 23 Pa.C.S.A. § 4321(2); Pa.R.C.P. 1910.19(e); **McKinney**, 634 A.2d at 1147. Child's emancipation may even have affected Wife's earning capacity, as she was home-schooling child.

Husband made a colorable claim that these changes were substantial, and the court therefore had jurisdiction to entertain Husband's request for modification and termination. Entry of a modification order based on these changes would have been ancillary to the appeal. Thus, on March 15, when the court ordered Husband to continue paying support under the February 23, 2017 order, and refused to entertain Husband's motions for modification and termination, the court erred. We therefore vacate the finding of contempt and remand with the instruction that the trial court decide Husband's pending motions for termination and modification.

Order vacated. Case remanded with instructions. Jurisdiction relinquished.

Judge Ott joins the memorandum.

President Judge Emeritus Ford Elliott concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 01/23/2019

- 19 -